**KING MOENCH & COLLINS LLP**
Matthew C. Moench, Esquire (MM1908)
51 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
(973) 998-6860
mmoench@kingmoench.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASMEEN FAHEEM and 24/7 FOOD MART LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ATLANTIC CITY, DALE L. FINCH, personally and in his official capacity as CITY OF ATLANTIC CITY DIRECTOR OF LICENSING AND INSPECTIONS, and JOHN DOES I-X (fictitious names), jointly, severally, and in the alternative,<br><br>Defendants. | DOCKET NO.: |

**BRIEF OF PLAINTIFFS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER (TRO) AND PRELIMINARY INJUNCTIVE RELIEF**

## INTRODUCTION

Yasmin Faheem is the owner of 24/7 Food Mart LLC, which operates a convenience store at 1406 Atlantic Avenue, Atlantic City, New Jersey 08401. Pursuant to Atlantic City Code Chapter 170, Ms. Faheem holds a Mercantile License permitting her to operating her business in Atlantic City as a Licensed Mercantile Business Owner. (LMBO).

As a LMBO, must pay various fees and applications initially, and each year annually. Section 170-13 of the Atlantic City Code states that any Mercantile License may be suspended, cancelled or revoked for "good cause by the Mercantile Licensing Division of Atlantic City" for a variety of reasons enumerated in 170-13(a). At issue here is subsection A(2), which states that a license may be suspended for:

"The existence of disturbances or other conditions at, near or in the premise which cause or tend to create a public or private nuisance or which injuriously affects the public health, safety or welfare of the citizens of the City of Atlantic City." Paragraph (a)(3) provides that a license may be suspended for "permitting or causing the commission of, any act in the operation of the business, which act is unlawful or is prohibited by any ordinance, rule or law of the City, state or federal government."

Section B indicates that "[t]he Director of Licenses of Mercantile may take into consideration the lack of proper supervision of the licensee, as well as the number of valid requests for police assistance to quell disturbances or to arrest violators which were caused by ats or an omission or responsibility by the licensee or his agents."

There are no further standards set forth on the types of actions which may result in a revocation, suspension, or cancellation of a license, nor any standards to apply to find that discipline is warranted or to set standards as to the proper level of discipline.

Critically, moreover, the ordinance permits the Mercantile Licensing Division to suspend a license without providing for any right to a hearing prior to the suspension. Ordinance 170-13(A)(5) provides for a notice and hearing provision only in the instance when a license is being revoked because of prior violations. There is no similar notice and opportunity to be heard language applicable to suspensions or revocation for other reasons.

Instead, the sole remedy after a suspension is to seek an appeal with the Director of Licensing and Inspections within 30 days of the decision. (Ordinance 170-15). Upon such an appeal the Director "shall conduct a hearing at which time evidence may be presented by either party. The Director's decision may be appealed by the applicant/licensee to a court of competent jurisdiction."

On August 26, 2024, Yasmin Faheem received a copy of a letter from Dale L. Finch, Director of Licensing & Inspections invoking Section 170-13 to and indicate that "the Mercantile license at the above address shall be **suspended immediately….**" The letter quotes Section (a)(2) but does not provide any allegations or facts upon which a suspension under Section (a)(2) is based. The letter also quotes Section (a)(3), and following a recitation of the language of the ordinance, states that "specifically, unlawfully conducting the sale of untaxed cigarettes and distributing of controlled dangerous substances." No further details are provided.

The letter provides seven days to request a hearing to review the charges 'as defined by the Atlantic City Police Department and the State of New Jersey." However, those charges or any related documents were not, and have not, been provided. The letter then indicates that upon such a request the "length of suspension will be determined."

On August 27, 2024, counsel for 24/7 Food Mart and Yasmin Faheem sent a letter to the Director of Licensing & Inspections, asserting that (1) any suspension conducted pre-hearing was unconstitutional and unlawful, (2) demanding facts and information sufficient to providing meaningful notice and an opportunity to be heard, and (3) demanding a hearing within a reasonable time after obtaining information underlying the basis for the suspension.

4

As of this time, the store remains closed, no additional information has been provided, no hearing date is set.

### THE COURT MUST GRANT EMERGENT INJUNCTIVE RELIEF DIRECTING THAT THE REVOCATION OF THE MERCANTILE LICENSE WITHOUT A HEARING VIOLATES PLAINTIFFS' 14TH AMENDMENT DUE PROCESS RIGHTS

To obtain a temporary restraining order or preliminary injunctive relief, the movant must establish the following four factors:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

GJJM Enters., LLC v. City of Atl. City, 293 F. Supp. 3d 509 (D.N.J. 2017) (quoting Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017)); Corporate Synergies Grp., LLC v. Andrews, 775 Fed. Appx. 54 (3d Cir. 2019) ("The factors are the same for both temporary restraining orders and preliminary injunctions[.]"). "A district court—in its sound discretion—should balance these four factors so long as the party seeking the injunction meets the threshold on the first two." Id. (quoting Reilly, 858 F.3d at 176) (alterations omitted).

As set forth herein, Plaintiffs are able to satisfy their burden and are entitled to a temporary restraining order and preliminary injunctive relief.

**A:** **Reasonable Probability of Eventual Success**

To state a claim under Section 1983 for procedural due process, a plaintiff must "allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).

To "establish a cause of action for a violation of Procedural Due process, a plaintiff [must prove] that a person acting under color of state law deprived [him] of a protected interest [and] that the state procedure for challenging the deprivation does not satisfying the requirements of procedural due process.'" H&R Grenville Fine Dining, Inc. v. Borough of Bay Head, 2011 U.S. Dist. LEXIS 145447, at *54 (D.N.J. Dec. 19, 2011) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991)).

1. Dale Finch and the City of Atlantic City Were Operating Under Color of State Law

Plaintiffs received a letter from Dale L. Finch, Director of Licensing & Inspections, on City of Atlantic City letterhead, officially advising Plaintiffs that he was immediately suspending the mercantile license at 1406 Atlantic Avenue held by Plaintiffs. That action was being taken pursuant to Atlantic City Ordinance Chapter 170. There can be no question that the actions were undertaken by a person acting under color of state law.

2. <u>Due Process Protections Apply to the Deprivation of A Business License</u>

A business license has been held to be a property interest warranting constitutional due process protections. See <u>Fairview Ritz Corp. v. Borough of Fairview</u>, 2013 U.S. Dist. LEXIS 158678, *37-38 (D.N.J. Nov. 1 2013) (citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 543 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood). "Once issued, a license or permit 'may become essential in the pursuit of a livelihood.'" <u>Id.</u> at *38 (quoting <u>Bell v. Burson</u>, 402 U.S. 535, 539 (1971)). See also <u>Smith v. Borough of Bellmawr</u>, 2024 N.J. Super. Unpub. LEXIS 1761 (App. Div. Jul. 24, 2024).

Therefore, it is well settled that an issued business license, like the one at issue here requires implementation of procedural due process protections.

3. <u>The Immediate Deprivation Before a Hearing of an Issued Business License is Unconstitutional</u>

In order to determine whether a pre-deprivation hearing is required the courts must apply the factors set forth in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976). Under those factors the court analyzes: (1) the nature of the private interest affected by the proceeding; (2) the risk of an erroneous deprivation of such interests through the procedures used, and (3) the Government's interest furthered by proceeding. Here, all three factors find in favor of Plaintiffs.

Depriving a business owner of a license to do work, whether a mercantile license or an occupational license, or any other, is significant. Every day that the business is closed, the business is unable to earn revenue, the business loses products, which are perishable, and the business owner, and employees, are unable to earn a living. Every day that the business is closed is significant.

The procedure utilized here contains extreme risks of erroneous deprivation. First, it vests sole authority with the department of Licensing and Inspections to determine, without input or hearing, whether the license shall be immediately suspended pending a future hearing. This affords the business owners, like Plaintiff, with no ability to be aware of the pending suspension. The first prerequisite of due process is "fair notice, so that a response can be prepared and the respondent fairly heard." Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978).

Here, no notice was provided, let alone a discussion on whether the procedures were sufficient. The suspension was effective immediately with the delivery of the August 26, 2024 letter. No notice that the letter would be issued nor an opportunity to be heard before the notice was issued was provided.

Post-deprivation, the letter permits a request for a hearing. That hearing is an appeal, to the same person who issued the initial suspension. Under the Ordinance, appeals are taken to the Director of Licensing & Inspections. It is that same person

8

who issued the suspension itself, therefore, depriving Plaintiffs of an opportunity for any type of independent review of the suspension already imposed.

Furthermore, by issuing a suspension pre-hearing, even if a hearing were held within a day or two (which raises separate issues), then no matter what a business is deprived of its rights, even if a hearing (heard by the same person who issued the suspension) were to find that the suspension was unwarranted.  Thus, under this procedure, there is no way that a business owner is not suspended for at least some time period, being deprived of his or her ability to work, regardless of the merits of the suspension.

This system forces a suspended business owner to seek the most expedited hearing possible, regardless of whether they have enough information as to the basis for the allegations or any meaningful opportunity to prepare.

Here, the notice provides no details as to the basis for the complaint. Therefore, for plaintiffs to attend a hearing they would have no ability to determine what the underlying factual allegations are and how to appropriately respond.  It was only after counsel for Plaintiffs sent a letter demanding documentation that the City provided copies of the complaints which appear to form the underlying basis for the claims.  While the letter from the City's attorney indicates that the City offered a hearing to take place one day later, such a hearing was offered without any

documents, any time to consult an attorney, or any time to prepare at all. Meanwhile, the suspension is already underway, regardless of the merits.

In Fairview Ritz Corp. v. Borough of Fairview, Judge Linares rejected the defendants' attempts to justify a pre-hearing deprivation of rights by pointing to an appellate process. Judge Linares correctly pointed out that the cases cited by defendants dealt with the denial of an initial issuance of a license, while there, as is the case here, a pre-hearing deprivation of an already issued license is entirely different and simply having a post-deprivation appeal process is unlikely to be sufficient. Fairview Ritz Corp. v. Borough of Fairview, 2013 U.S. Dist. LEXIS 158678, at * 42.

In Smith v. Borough of Bellmawr, the New Jersey Appellate Division rejected a business owners' due process claims related to deficient notice, where the hearing took place at a public meeting on six days' notice subject to open public meeting law, and was conducted before the deprivation of the mercantile license. Smith v. Borough of Bellmawr, 2024 N.J. Super. Unpub. LEXIS 1761, at *24-25.

While the government interest in a timely adjudication of issues impact the public health and welfare, that interest is not so great as a general matter that Atlantic City can permit its Director of Licensing and Inspections to unilaterally and immediately suspend licensees and force them to undergo a post-deprivation hearing

process after their livelihood and business have already been halted and the property rights already infringed.

Those facts are even truer here where, as the City has now stated, the deprivation is based upon allegations – not findings by any court or tribunal – that the only charges against the license holder is for – allegedly – selling untaxed cigarettes. Such an allegation, even if true, does not warrant a suspension of her business license at all, let alone raise to the level of some public health risk that warrants an immediate suspension. Furthermore cigarette sales are licensed by the state and the state, not the city, can take action to revoke the cigarette license. However, a convenience store can still operate absent a cigarette sales permit to the extent that such a remedy is even appropriate.

Finally, the City has provided copies of a complaint against Cecil Morgan, an employee of 24/7 Food Mart, alleging that he was arrested for possession of controlled dangerous substances and intent to distribute same. Other than knowing that Cicil Morgan is an employee of the convenience store, neither the City's letter nor the Complaint provide any other connection to the store, its operation, or its owners. Nothing sets forth the basis to indicate what actions or inactions the City is alleging against the business or license holder as related to the charges against Cecil Morgan.

Plaintiffs have a significant property interest in their business license, and procedural due process requires notice and a meaningful opportunity to be heard *before* the deprivation of their rights. Now, post-deprivation, Plaintiffs' only choice is to attend a hearing without any opportunity to submit public records requests for documents, meaningfully prepare a presentation to refute any evidence. Such a post-deprivation hearing with no meaningful notice and no meaningful opportunity to be heard is unconstitutional.

In Goldberg v. Kelly, 397 U.S. 254 (1970), the Supreme Court rejected a post-deprivation hearing process where the plaintiff was not provided sufficient time to consultant an attorney, prepare evidence, and making sure that they had a meaningful opportunity to be heard.

The Court must order that Plaintiffs' mercantile license be restored immediately and that a hearing be set on the proposed suspension in a reasonable time for Plaintiffs to prepare.

**B:** **Irreparable Harm**

Violations of a litigant's constitutional rights constitute irreparable harm per se. No other injury is required for an injunction provided that the other necessary ingredients to relief are present. Elrod v. Burns, 427 U.S. 347, 373-4 (1976). While this case involves significant loss of business and financial revenue, for which

Plaintiffs can and will seek monetary contributions, the current matter involves a deprivation of constitutional rights which weigh in favor of injunctive relief.

**C:** **Harm to Other Interested Persons**

In this case, there is no harm to others. The only allegations directly tied to Ms. Faheem is that she and another employee allegedly sold cigarettes without following the requisite procedures. None of those allegations involves a public health issue, let alone an emergent one. Relatedly, an employee possessing illegal substances is neither a public health emergency nor uncommon. Nothing presented suggests that an overwhelming public interest requires the shuttering of the doors of a business is warranted prior to any hearing whatsoever simply because an employee allegedly had drugs in their possession.

For these reasons, there is no demonstrable harm to other interested persons if an injunction is granted.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court issue an immediate temporary restraining order and preliminary injunction, consistent with the foregoing and the attached proposed form of order, immediately reinstating the Plaintiffs' Mercantile license and directing that a pre-deprivation hearing should be held a reasonable time period in the future to permit an opportunity to be meaningfully heard.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KING, MOENCH & COLLINS |
| DATED: August 28, 2024 | BY: /s/ Matthew C. Moench |
|  | Matthew C. Moench, Esquire (MM9108<br>Attorneys for Plaintiffs<br>51 Gibraltar Drive, Suite 2F<br>Morris Plains, NJ 07950<br>(973) 998-6860<br>mmoench@kingmoench.com |