**KING MOENCH & COLLINS LLP**
Matthew C. Moench, Esquire (MM1908)
51 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
(973) 998-6860
mmoench@kingmoench.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASMIN FAHEEM and 24/7 FOOD MART LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ATLANTIC CITY, DALE L. FINCH, personally and in his official capacity as CITY OF ATLANTIC CITY DIRECTOR OF LICENSING & INSPECTIONS, and JOHN DOES I-X (fictitious names), jointly, severally, and in the alternative,<br><br>Defendants. | DOCKET NO.:  24-cv-08798-ESK-EAP |

<u>**SUPPLEMENTAL BRIEF OF PLAINTIFFS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER (TRO) AND PRELIMINARY INJUNCTIVE RELIEF**</u>

## <u>UPDATED FACTUAL AND PROCEDURAL HISTORY[1]</u>

### A. The Hearing and Decision

This matter was initially filed upon the unconstitutional pre-hearing taking of Plaintiffs' mercantile license by Defendants in violation of Plaintiffs' constitutional rights to procedural due process pursuant to the United States and New Jersey Constitutions as protected by 42 U.S.C. 1983 and the New Jersey Civil Rights Act, respectively.[2] Simultaneously with filing the Complaint, Plaintiffs filed a motion seeking immediate injunctive relief to restore their license pending a hearing and to direct Atlantic City to hold a constitutionally compliant hearing. The day following the filing of the Complaint and Motion, Atlantic City held a hearing, which Plaintiffs participated in under protest.

The hearing, to the extent it can be called that, involved a recitation of the charges pending in municipal court against the store clerk as to alleged drug sales, and against the store owners for various cigarette violations. Prior to the hearing, the only documents made available to Plaintiffs were the municipal court complaints against Plaintiffs and the store clerk. Defendants specifically denied Plaintiffs'

---

[1] Plaintiffs are not re-stating every fact already provided in the Complaint and initial motion, of which the Court is familiar, and incorporates those facts by reference.

[2] The Original Complaint consists of three counts asking for the Court to find that Atlantic City Code 170-13 is unconstitutional facially and as applied under both the Federal and State constitutions.

requests for "police reports, bodycam footage, MVR footage, interview notes and other documents related to the charges contained in the August 27, 2024, letter." According to the City those items were not necessary because "the City will only be addressing the charges and the suspension of the mercantile license" and the items requested by Plaintiffs "will not be provided as they will not be discussed." (See Declaration of Ryan Windels, Esq., dated September 10, 2024 ("Windels Decl."), **Ex. A**.))

The hearing was conduced virtually and was attended by Karl Timbers, Esq., Assistant City Solicitor, Dale Finch, the Director of Mercantile Licensing, two Atlantic City police officers, along with Plaintiffs' attorney, Ryan Windels, Esq., and Plaintiffs.  (Windels Decl., ¶ 1-2). After introductions by Mr. Timbers, an Atlantic City police officer began to read through a number of incidents that have occurred at or around the 24/7 Food Mart over the past few years.  (Windels Decl., ¶¶ 3-4) Those incidents (which will be discussed further later) were unrelated to the recent events which precipitated the current suspension.  Moreover, those incidents were not disclosed prior to the hearing in any way.

Mr. Windels then responded for Plaintiffs, setting forth Plaintiffs position that the current charges brought on August 16, 2024, did not support a suspension of Plaintiffs' mercantile license.  The cigarette tickets are administrative/municipal court matters subject to a low fine (assuming the charges are proven), and the drug

charges against the store clerk are unconnected to the store owners (assuming, again, that the charges are proven).  While we were not in possession of the specific incidents referenced by the officers at the time of the hearing, the general position was stated that the store owners cannot be held responsible for overall actions of third parties.  (Windels, Decl., ¶ 5, 7).

Following Plaintiffs' position, Mr. Timbers for the City stated that Plaintiffs would be restored if Plaintiffs agreed to permit the City police from connection into the store's camera system to permit the police to observe the store in real time. (Windels Decl., ¶ 6). Defendants asserted that Plaintiffs previously agreed to this but had not done so and that had they done so, the "recent incidents might not have happened…"  (Windels Decl., Ex. B).  The matter then concluded.

After the hearing, Mr. Windels sent an email to counsel for the City ask some technical questions about a potential camera connection, and whether the suspension would be lifted immediately upon an agreement to connect or only upon actual connection.   (Windels Decl., Ex B.) Mr. Windels also asked what potential suspension would occur if Plaintiffs did not agree to the request.

In response, Mr. Timbers provided, for the first time, some records relating to the various incidents mentioned by the police officers at the hearing. (Windels Decl., Ex. B).  Mr. Timbers also responded that he did not know when the suspension would be lifted if agreed to by Plaintiffs and that if Plaintiffs did not agree he did

not know the range of potential actions which Plaintiffs could face. (Id.). Mr. Windels sent two more emails to Mr. Timbers, on August 30, 2024, and September 3, 2024, asking whether Mr. Timbers had a contact with the Police Department to inquire as to what would be involved if Plaintiffs were to agree to the demands of the City. (Id.). No response was provided.

Instead, a Decision was issued on September 3, 2024, and included as part of Defendants' opposition to Plaintiffs' motion for injunctive relief. (Windels Decl., Ex. C). The Decision has several notable components:

First, the only charges specifically articulated relating to the August 16, 2024 incident are those against the store clerk (although the Decision does not articulate that fact and simply recites the criminal statutes). As such the City has seemingly abandoned basing its suspension upon the cigarette charges originally included in the August 26, 2024 Notice.

Second, the Decision indicates that the August 26, 2024 notice of suspension advised Plaintiffs that they were entitled to a hearing within seven days to contest the suspension, that such a procedure was consistent with the City Ordinances, and that such a hearing was held. It should be noted that the ordinance (170-15) states that a hearing can be held within 30 days after a suspension.

Third, the Decision then provides that part of the basis for suspending the license is the "continued habitual criminal use of this location to distribute drugs"

which has "put the community in a dangerous situation…" Therefore, based on the severity of the charges against the clerk, and the "past criminal violations" which are then articulated, it was the decision of the hearing officer "that the mercantile license remain suspended until the criminal matter can be heard or resolved."

The Decision then concludes that "the mercantile license shall remain suspended and continue to be suspended until the criminal matter has been resolved or decided.  Upon a decision from the criminal court the issue of the removal of a mercantile license will be re-visited and a determination will be made as to either continue revocation or allow renewal of the mercantile license."

As such, Plaintiffs' mercantile license is now suspended indefinitely until the conclusion of the criminal charges against the clerk.

### B. Additional Production of Documents

While additional documents may still be missing from the production, the City's additional production of documents provided pursuant to the Court's Order has only highlighted even greater concerns with the City's conduct, likely revealing additional improper and unconstitutional conduct.

First, the City provided two police reports from the incident. (Windels Cert., Ex. E).  Without trying to litigate the underlying criminal charges here, the basic facts alleged in the police reports are that the police observed the clerk engaging in interactions with several individuals which they believed were suspicious and

consistent with drug activity.  One individual was stopped and allegedly purchased marijuana from the store clerk.  Another individual was seen buying cigarettes in a manner generally presented as "suspicious" although that individual was not stopped and there is no indication that anything but cigarettes were purchased.

Assuming for the moment that all allegations against the clerk are true, the police reports show that the only drugs found were on the person of the clerk.  The police reports confirm that the store owners were not present at the time and that there is no indication that the store owners had any involvement whatsoever related to the alleged activities of the Clerk.  Nor do the reports suggest that the clerk has any relationship with the store owners in any way other than a basic convenience store employee.

Additionally, reviewing the body camera footage is not only concerning but reveals additional constitutional violations and common law torts which will be asserted against the City moving forward.  The footage shows that the clerk was arrested outside of the store (about two or three storefronts away).  He is then walked back into the store, where what appears to be a half-dozen or more police officers begin to search every inch of the store.  A fair cry from the claims that the materials were observed in "Plainview" as stated in the report, the video indicates that the police went behind the counter, opened shelves, opened bags, and went through

personal belongings.  The store clerk continuously tells the police officers that they have no right to search the store.

The police reports and video also show that they coordinated with mercantile licensing, who had an inspector show up and then also being conducting his own search with the assistance of the police.  Meanwhile the store owners are not present and the clerk is indicating that they are not permitted to search. Despite attempts to paint the alleged activity of the clerk as open and notorious such that somehow the business owners and their license should be penalized, the video demonstrates that it took more than six police officers together to search the store and uncover what they believe to be illegal cigarettes (found out of sight) and alleged drug paraphernalia within what appears to be the Clerk's personal possession behind the counter. There is no indication on the video or in the reports that the alleged conduct is anything other than the activities of a third party, the store clerk.

What the video does reveal is an improper warrantless search, trespass, and invasion of privacy by the Atlantic City Police Department far outside any lawful search incident to arrest and in violation of Plaintiffs' Fourth Amendment rights.

## <u>LEGAL ARGUMENT</u>

I. **PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS RELATED TO PRE-HEARING DEPRIVATION WERE VIOLATED, RESULTING IN AN INPROPER SUSPENSION WHICH MUST BE IMMEDIATELY VACATED**

A. <u>No Public Emergency Existed to Excuse Proper Due Process</u>

Plaintiffs are not going to repeat all of the factual arguments made in the initial briefing related to the unconstitutionality of depriving someone of a property interests without a hearing, and incorporate all of those arguments herein.

However, Plaintiffs do wish to address to issues raised during oral argument on the initial motion.  First, the police reports and bodycam footage do confirm that the arrests occurred on August 16, 2024.  However, the suspension notice was issued 10 days later, on August 26, 2024.  Therefore, any argument by the City that they possessed an emergent and overwhelming public safety need to act immediately is simply false.  A hearing could have occurred within those 10 days, or if the City was not ready to act within those 10 days, there is no indication why a notice of intent to suspend could not have been issued and the hearing occur 10 or 14 days after the August 26, 2024 notice.

B. <u>No Valid Post-Deprivation Process Existed to Overcome the Deprivation of Due Process</u>

In Cloister East, Inc. v. N.Y. State Liquor Auth., 483 F.Supp.3d 221 (S.D.N.Y. 2020), the court upheld the constitutionality of a pre-hearing deprivation of a liquor license under a state statute which permitted such immediate suspension if the "public health, safety, or welfare imperatively requires emergency action," and such suspensions must be made "pending proceedings for revocation or other action" that "shall be promptly instituted and determined." Id. at 228. While that case ultimately upheld the constitutionality of the pre-hearing deprivation, it did so because the court found that New York State Law specifically provided for an immediate administrative remedy to challenge liquor license suspensions and therefore a constitutional violation was avoided.

Here, however, no such adequate post-deprivation remedy is available to save the unconstitutional due process violation. The only remedy available under Atlantic City ordinances is for the licensee to seek an appeal with the same individual who issued the initial suspension. The ordinance says that the appeal can be made within 30 days of being suspended (Ordinance 170-15), although the notice in this case provided for a seven-day window. However, that window (whether 7 days or 30 days) is simply the time period for a licensee to request an appeal. There is nothing within the ordinances or regulatory framework to set forth the time within which Atlantic City will schedule a hearing, or will issue a decision.

Furthermore, unlike an Article 78 Proceeding in Cloister East, Atlantic City's ordinances contain no other procedural guidelines as to the process to be provided nor even an independent review of the suspension (such as by the City Council instead of the Director). Even the decision to implement the suspension is left to one person's sole discretion in Atlantic City. The court in Cloister East found that a constitutional violation would have existed but for the specific Article 78 Proceeding remedy available to the plaintiffs. Here, the ordinances itself recognize that the only remedy is for an aggrieved licensee to appeal the Director's decision "to a court of competent jurisdiction."

Similarly, Padberg v. McGrath-McKechnie, 108 F.Supp.2d 177 (E.D.N.Y. 2000) raised by the Court at oral argument, also addressed situations where a post-deprivation procedure may be sufficient to save a pre-hearing deprivation from being found unconstitutional. In Padberg the court found that the post-deprivation procedure provided was simply a "summary suspension hearing" which just consisted of an "ALJ verifying that his summonses were properly filled out, and examining his record for past violations." Id. at 188. Thus, it is not just about how quickly a hearing occurs, but the substance of it. In this case, the post-deprivation hearing, which was the only hearing available, consisted of not much else than what occurred in Padberg and is wholly inadequate as either a preliminary or final hearing process.

Padberg also recognized the significant privacy interest in operating a business pursuant to a license, and note that the risk of erroneous deprivation under Mathews is heightened when the decision to suspend is simply done by one person. The court also noted that there was no public emergency present to override the right to due process. In this case, even assuming that the basis for the suspension could be a public emergency (something Plaintiffs disagree with completely), the fact that ten days expired between the charges and the suspension put an end to any basis for Defendants to justify the lack of due process provided.

C. The Pre-Hearing Deprivation Procedure is Not Authorized by The Enabling State Statute

N.J.S.A. 40:52-1 authorizes municipalities the power to regulate businesses and issue licenses such as provided here. However, that power is tempered by N.J.S.A. 40:52-2, which states that a "governing body may…revoke any license for sufficient cause and after notice and hearing." This raises two issues with the process as applied and in the facial challenge.

First, the statute specifically requires "notice and hearing" before taking action against a license. Nothing provides for an alternate process and municipal power only stems from that given to it by the state.

Secondly, the statute states that a "governing body" may revoke a license. It does not permit an administrative agent to do so. Here, only the governing body

would have had authority under the state statute to act and its process utilized and the language of the ordinance is ultra vires and unenforceable.

As such, the Court should find that the pre-hearing deprivation process was not compliant with state and federal procedural due process rights. As such, the Court should vacate the current suspension which flows as a result from the improper pre-hearing deprivation. The Court should also award Plaintiffs damages to which they are entitled to under 42 U.S.C. 1983, and the New Jersey Civil Rights Act in the form of lost profits, value of lost goods, attorneys' fees, costs, punitive damages, nominal damages, and any other remedy the Court deems equitable and just.[3]

## II.    ATLANTIC CITY'S MERCANTILE LICENSING SYSTEM LEGISLATIVELY CREATES AS "SUSPEND FIRST" UNCONSTITUTIONAL SYSTEM

In addition to the as applied challenge to the constitutionality of Atlantic City's suspension of Plaintiffs' mercantile license, the entire scheme is facially unconstitutional and Defendants' must be enjoined from further enforcement of the statute.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of

---

[3]    The issue of the pre-hearing deprivation is ripe for a full and final adjudication on the merits. Other than potentially requiring some discovery on the quantum of damages, there is no further fact or legal analysis necessary for determining the issue of the as-applied constitutional challenge to the pre-hearing deprivation under state and federal law.

circumstances exists under which the Act would be valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987). Here, the legislative enacted by Atlantic City is unconstitutional on its face, simply by looking at the text of the ordinances at issue, and no set of facts, based on the ordinance scheme provided could meet constitutional muster.

Atlantic City has legislatively decreed an unconstitutional "suspend first, hearing after" scheme for imposing discipline upon mercantile license holders. Ordinance 170-13 states:

> Any license or permit issued pursuant to the provisions of any mercantile ordinance or other ordinances of the City of Atlantic City, or any amendment thereof, for the conducting of business, may be suspended, canceled or revoked for good cause **by the Mercantile Licensing Division of Atlantic City**.

(emphasis added). The ordinance provides no requirement for notice or opportunity to be heard under the suspension, cancellation or revocation provisions, but specifically dictates that those decisions are in the solely authority of the Mercantile Licensing Division in its unilateral judgment of "good cause."

In case there was any question, Ordinance 170-15 makes it clear that after a suspension, revocation or refusal to issue or renew a license, any person may then, after the suspension, revocation or failure to renew:

> appeal that decision within 30 days to the Director of Licensing and Inspections by filing written notice of appeal with the Mercantile Licensing Division. The Director shall conduct a hearing at which time evidence may be presented by either party. The Director's decision may

be appealed by the applicant/licensee to a court of competent jurisdiction.

Atlantic City Ordinance 170-15.  This scheme specifically creates a system where by the deprivation of the property right occurs without notice and opportunity to be heard prior to the deprivation, and then sets forth vague appellate rights after the fact.  As such, the scheme literally creates a due process violation.

The Ordinances should be enjoined, Plaintiffs' suspension immediately lifted, and damages, including compensatory and punitive damages, including attorneys fees and cost should be awarded.

## III.    ATLANTIC CITY'S MERCANTILE LICENSE ENFORCEMENT ARMS ARE UNCONSTITUTIONALY VAGUE FACIALLY AND AS APPLIED

### A. The Ordinances are Facially Unconstitutionally Vague

As the Supreme Court held in Grayned v. City of Rockford, 408 U.S. 104 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.  Vague laws offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

Id. at 108-09.  That description could have been written directly for the statutory scheme implemented here by Atlantic City.

A statute is void for vagueness when its words fail to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden…." Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972).  When a penal provision is not "… sufficiently explicit to inform those who are subject to it, what conduct on their part will render them liable to its penalties, …" Connally v. General Construction Company, 269 U.S. 385, 391 (1926), there is a denial of the due process required by the Fourteenth Amendment." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). Explicit standards of conduct are also required in order to protect against arbitrary enforcement.  Papachristou v. City of Jackson, 405 U.S. at 162.

In Village of Hoffman Estates v. Flipside, Inc., 455 U.S. 489 (1982), the Court expounded on Grayned, holding:

> These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair enforcement-depend in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject-matter is often more narrow, … The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.
>
> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit

the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

Id. at 498-499.

Ordinance 170-13A(2) permits the mercantile division to revoke or suspend a license, in its sole direction if it finds:

> existence of unsanitary conditions, noise, disturbances or other conditions at, near or in the premises which cause or tend to create a public or private nuisance or which injuriously affects the public health, safety or welfare of the citizens of the City of Atlantic City.

This section permits the Defendants nearly universally unrestricted power to determine in their own minds what constitutes something which could in any way cause a disturbance to any person or which could somehow impact the nearly limitless categories of "public health, safety welfare." Thus, a person would have no idea what conduct could potentially bring someone within risk of unilateral revocation of their license.

This section is even more offensive when one realizes that the ordinance does not even require that the offending conduct or condition be caused by the business and could be caused by completely unrelated third parties. Further the ordinance permits revocation or suspension for those conditions existing "near" the premises. In other words, if other people, over whom you have no control, engage in some conduct that the mercantile director decides is a disturbance, he can shut down your business.

Similarly, Ordinance 170-13A(3) permits the revocation or suspension upon:

> The commission of, or permitting or causing the commission of, any act in the operation of the business, which act is unlawful or is prohibited by any ordinance, rule or law of the City, state or federal government.

Again, this section permits the Mercantile Division to become judge, jury, and executioner in deciding on its own whether a business has violated any law of any government authority, and then decides, in his own judgment, whether to suspend the license.

This leaves all business owners with mercantile licenses unclear as to what conduct is prohibited, what penalties could apply to a particular situation, whether in their control or not, and subjects to the absolutely dictatorship of the Division of Mercantile Licensing.   There are certainly constitutionally compliant methods for the City to be able to shut down problematic businesses while also meeting the Constitution's basic requirements.  This, however, is not it.

While the conduct regulated may be economic, it involves the deprivation of a property right protected by constitutional due process.  These ordinances are void on their face and should be found unconstitutional.

B. <u>The Ordinances Are Unconstitutionally Vague As-Applied</u>

Even if the ordinances somehow escape being found unconstitutionally vague, they were unconstitutionally vague as applied, subjecting Plaintiffs to uncertainty and to a moving target at the whims of the Defendants.

The notice initially provided to Plaintiffs simply provided Plaintiffs with a listing of the two provisions above.  It provided absolutely no context for the basis of the suspension, what conduct was being penalized or the penalties for it.  Only when Plaintiffs' counsel began to send letters did Defendants then indicate that the conduct at issue were allegations of drug possession against the clerk, and cigarette violations against the owners.  Even then, however, the ordinances to not provide any context as to what triggers suspension – is it an offense for a cigarette tax violation (something one would expect to be a minor fine or administrative proceeding with the state authority in charge of cigarette sale licensing)?  If so, does it need to be a second or third offense, or just a first? Is it sufficient just that Plaintiffs be charged, or must they be convicted?  Or is a suspension based upon the conduct of a third party, and when does the conduct of a third party result in a license suspension? Once again, Plaintiffs have no idea as to when their conduct or a conduct of a third party may result in a license suspension, and certainly did not know it during this hearing process.

The Defendants stated that the hearing would be based off of the existence of the charges on August 16, 2024, however, at the hearing, Defendants then relied upon the existence of other calls for service to justify the suspension.  Importantly, other than a 2018 charge involving illegal activity of a store employee, none of the other incidents have any connection whatsoever to the store's operations or its

owners.  There was no warning that because of illegal activity outside the store or calls for service for police and medical assistance that such conduct could be used against Plaintiffs as to their license.

It certainly was not included in the notice of suspension, nor any time after those incidents.  However, because of the unconstitutionally vague nature of the ordinances, Plaintiffs are left to the whims of the Defendants, and the basis for a suspension becomes a moving target.

Plaintiffs here had no reason to know that their *alleged* conduct, or the *alleged* conduct of the store clerk would result in an immediate and indefinite license suspension.  Further, the Ordinances provided no notice as to what object standards or criteria would be used to determine whether a specific action or event lead to discipline or the level of discipline which could occur.

## IV.    The Ordinances Require Submission of An After-the-Fact Appeal to a Biased Decisionmaker

The process, both as applied and facially, is unconstitutional in that it requires the submission of the hearing to a biased decisionmaker. A due process exists if a party is "required to submit a dispute to a self-interested party." Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 545 (3d Cir. 2017) (citing Carey v. Piphus, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is absolute in the sense that it does not depend upon the merits of a claimant's substantive

assertions…we believe that the denial of procedural due process should be actionable …without proof of actual injury."); United Church of Med. Ctr. V. Med. Ctr. Comm'n, 689 F.2d 693, 701 (7th Cir. 1982)("Submission to a fatally biased decisionmaking process is in itself a constitutional injury.")

In Plains, the court found that requiring the submission of a matter before the person who was also responsible for investigating the charges, a constitutional violation was stated.  The same conclusion was reached in Univar, Inc. v. Gesienberger, 409 F. Supp. 3d 273, 281 (D. Del. Sept. 17, 2019), finding that submitting a dispute to the same person who investigated it violates procedural due process.  "A claim for submission to a fatally biased decisionmaking process necessarily entails as an element a deprivation of liberty or property because at the core of procedural due process jurisprudence is the right to abidance notice of *significant deprivations of liberty or property* and to a meaningful opportunity to be heard." Deforte v. Borough of Worthington, 364 F. Supp. 3d 458, 481 (W.D. Pa. Mar. 4, 2019) (emphasis supplied) (internal citations omitted to Plains and Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).  In dismissing a fabricated evidence due process claim the court noted that situation was "[u]nlike in the administrative procedural due process context, in which submitting one's claims to a biased tribunal is itself injuries…" Id. at 482.

Here, the hearing held by Defendants which has now resulted in an indefinite suspension was submitted to the same individual who was the investigator and who issued the suspension.  Due process prohibits the submission to such a legally biased "tribunal," which deprives Plaintiffs of a meaningful opportunity to be heard.

The ordinances establish that procedure which is facially unconstitutional, and in Plaintiffs' case, the investigator was the hearing officer to whom the dispute was submitted, resulting in another constitutional violation.

## V.    THE HEARING ITSELF VIOLATED PROCEDURAL DUE PROCESS RIGHTS AND THE ORDINANCE PROVIDES FOR NO PROCESS OR PROCEDURES

Due process requires notice and a meaningful opportunity to be heard.  In this instance, no such meaningful opportunity was presented.  As already discussed, the submission of the matter to a biased hearing officer is itself a violation.  However, in addition other factors were present to deprive Plaintiffs of a meaningful opportunity in violation of their rights.

First, the hearing was held after the suspension which left Plaintiffs with no choice but to immediately agree to a hearing on a days' notice without additional time to conduct fact investigation, review legal options, or prepare.  Since the store was already closed due to the suspension, the process forces a quick rather than full hearing.

Second, in advance of that hearing, Plaintiff specifically requested documents related to the charges which would serve as the basis for any disciplinary action. Defendants refused to provide any of the requested documents related to the August 16, 2024 arrest and charges. Instead, they stated that the hearing would simply note that the charges existed. Refusing to provide Plaintiffs with relevant documents undermined any ability to raise factual or legal arguments as to whether the charges were valid and/or whether there was any connection to the license which could warrant suspension.

Then, at the hearing, Defendants for the first time began to predicate action based upon a series of other calls for service which were not disclosed prior to the hearing. At no time in the official notices or in any of the communications between counsel did Defendants disclose the existence of other facts upon which they would consider action against the license. Additional information was only provided after the fact, which generally consisted of police reports. Other than an incident in 2018, none revealed any actions related to the business itself or its employees, and none of the documents, including the 2018 matter actually indicate the resolution of those matters, just the initial police report or charging documents. Those initial disclosures, made after the fact, did not include any additional information about the August 16th complaints until ordered by the Court.

The hearing itself consisted simply of statements by the parties, and since the entire basis of the suspension was predicated on *the existence of charges, regardless of their ultimate disposition*, there really was not much for Plaintiffs to do. The charges exist, which is a fact. Whether the conduct as alleged actually occurred is a question for the criminal court process, thus, the matter was left solely to the unfettered discretion of the hearing officer (who was also the charging agent and investigator).

Finally, throughout the hearing process, no indication was provided formally or informally as to the full scope of the potential penalties. Nothing was set in ordinance, nor specific to this hearing, as to whether Plaintiffs were facing a one-week suspension, one month suspension, or the indefinite suspension they are currently suffering.

Each of these factors alone is sufficient to sustain a due process violation, however, when taken as a whole it is clear that the hearing failed to provide even the semblance of a meaningful opportunity to be heard.

## VI.   THE INDEFINITE SUSPENSION TIED IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND VIOLATES SUBSTANTIVE AND PROCEDURAL DUE PROCESS AND AMOUNTS TO A FOURTH AMENDMENT TAKING

"The substantive component to the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs in order to guarantee protection against government power arbitrarily and oppressively

24

exercised." Steele v. Cicchi, 855 F.3d 494, 501 (3d Cir. 2017) (internal quotations omitted).  "To maintain a substantive due process claim, [plaintiff] must have been deprived of a particular interest that is protected by the substantive due process clause." Id. (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)).

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d at 219.  "In other words, plaintiffs must have been deprived of a fundamental property interest under the Constitution." Id.

Third Circuit case law has been hesitant to expand substantive due process beyond rights that impact property interests.  There are cases (mostly unreported or district court cases) which have failed to extend a due process property interest to general business licenses or to a right to a specific job.  However, the Court here should find that a substantive due process right exists under one of two grounds.

First, under the third Circuit's decision in DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 600 (3d Cir. 1995), *abrogated on other grounds by* United Artists Theatre Cir., Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d. Cir. 2003), the court stated that "ownership is a property interest worthy of substantive due process protection."  The "ownership in a property interest" standard has generally been limited to an interest in real property.  Nicholas v. Pennsylvania State Univ.,

227 F.3d 133, 141 (3d Cir. 2000).  As such, courts have declined to find substantive due process rights in a host of non-real property contexts, such as right to a tenured position, right to a particular towing contract, right to pursue a specific job, right to have government no limit business, requirements for a business license, just to name a few.  Some of those cases, mostly unreported or other states' district court cases, contain broad language that a "business license" or "right to work" is not a fundamental right protected by substantive due process.  However, here that should not foreclose the question.

Beyond those cases not being binding on this Court, a specific business license authorizing a person to do business at a specific physical location, which relates to real property, where someone has invested significant time and resources, including ownership of the business assets located at the physical location, and predicated upon the property rights associated with the business license should be protected under DeBlasio and distinguished from general business licenses or simply conduct that may curtail or condition a license, but here where it amounts to a literal taking.

Nicholas states that under DeBlasio, there must be a showing for a "property interest of a "particular quality" that is not determined by state law."  Nicholas, 227 at 140.  The particular quality is that the interest is "fundamental" under the United States Constitution.  Id.

The Third Circuit noted in <u>Newark Cab Ass'n v. City of Newark</u>, 901 F.3d 146 (3d Cir. 2018) that "the only property interests we have thus far deemed fundamental involved ownership of real property." <u>Id.</u> at 155.  However, the court did not say it never could.  In <u>Newark Cab</u>, was a claim by a taxi-cab medallion holder that the loss of a the right to be an exclusive provider of ride-for-hire services in Newark did not meet the constitutional requirement for substantive due process protection.  The rights present there – the ability to be a cab driver – was not taken away at all.  Nothing precluded plaintiff from still driving a cab.  Additionally, the lose related solely to the value of the property – the medallion – but did not involve a literal taking of it.  Finally, there was no connection to real property at all in any way.  As such, the court held no substantive due process rights.  The court also cited other examples which generally impacted a specific contract, or impacts generally to reputation or a general ability to earn a living when being fired from a public job.

The facts here are starkly different and should rise to a substantive due process right.  The interest is not a generic license providing a generalized right to work, but instead is a specific license tied to one specific real property location.  In reliance upon that license, Plaintiffs have improved the real property, purchased inventory, bought equipment.  All of which is specifically tied to that location with regard to that specific license.  Defendants arbitrary and capricious actions have completely

stripped that property right from Plaintiffs, not simply diminished its value. Plaintiffs cannot simply "get a new contract" or "apply for a new job."

Plaintiffs' property interests in this specific license tied to this specific physical location, from which they cannot simply move, is the type of concrete fundamental right that would have been protected when the Constitution was drafted and which deserves substantive due process protection now.

Alternatively, the Third Circuit in Indep. Enters v. Pittsbhurgh Water & Sewerage Auth., 103, F.3d 1165, 1179 n12 (3d Cir. 1997) did articulate that substantive due process protections may apply in cases in where the property right is not sufficient to warrant protection under traditional tests as outlined above, but that a court may find a substantive due process violation where there is a property interest *and* the government acted arbitrary and irrational. The court there favorable recognized cases upholding a substantive due process violation where plaintiffs claimed plaintiffs acted under color of state law to deprive them of a property interest in issuance of an insurance permit (Blanche Rd. Corp. v. Bensalem Township, 57 F.3d 253 (3d Cir. 1995)) and supporting a claim where if a plaintiff can demonstrate that a town arbitrarily and irrationally denied them a zoning exemption which resulted in a constitutional deprivation of a property interest.  Neiderhiser v. Berwick, 840 F.2d 213 (3d Cir. 1988)

There is also a less developed body of case law supports a finding of a liberty. See Piecknick v. Pennsylvania, 36 F.3d 1250, 1261-62 (3d Cir. 1250) (distinguishing a claim seeking a specific employment contract as not warranting substantive due process protections with situations where "a person's license to pursue a chosen occupation is revoked or substantially interfere with, Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981), or where there is harm to an individual's reputation, *see* Chilingirian v. Boris, 882 F.2d 200 (6th Cir. 1989).").

The September 3, 2024 Decision meets constitutional muster, the Decision is irrational and unreasonable, in both the basis for sustaining any discipline and in the discipline imposed, and amounts to a substantive due process violation and an unconstitutional taking under the Fourth and Fourteenth Amendments, as well as the New Jersey Constitution.

The Decision is not based upon any conduct of Plaintiffs. There are no allegations that they did something wrong or that they failed to do something required of them. Paragraph 1 of the decision relates solely to the *alleged* conduct of a store clerk. Nothing demonstrates that those allegations are true, or that even if true, that such actions by third parties can or should serve as the basis for discipline against a business owner's license.

Further, the Decision is unfairly, and also irrationally, based upon approximately 10 calls for service at the store. While they are unfortunate, and, in

some cases tragic, with the exception of one set of allegations in 2018 (for which a resolution is not provided), none of the incidents listed show any conduction at all to the Plaintiffs, their employees, or the store's operation. Instead, all of those reports note that the store is located in a high crime, high drug area of the city. A store owner should not be penalized because of the neighborhood in which he tries to operate, or held accountable of the actions of parties over whom there is no relationship let alone control. The use of these incidents, disclosed for the first time at the hearing, and for which partial documents were only provided after the completion of the hearing, only underscore the unreasonable and arbitrary nature of the decision, and the substantive due process and unconstitutional taking which has resulted.

Separately, the actual discipline imposed is an irrational and unreasonable indefinite taking of Plaintiffs' property interest in its business and effectively shuttering the business, depriving Plaintiffs of their livelihood. It is even more shocking that the indefinite license suspension is now connected to a third-party's criminal case, which may take months or years to resolve, without any showing whatsoever that Plaintiffs had any connection to the alleged activity of the clerk.

Further compounding the harms, the Decision does not even indicate what will happen after the resolution of the clerk's criminal case; just that the license will be reevaluated at that time. If the Clerk were to be found not-guilty and the charges

unfounded or dismissed, does Plaintiffs' license get restored?  If the clerk pleas to one of the four charges, what does that mean for Plaintiffs? What if the charges get downgraded?

Suspending Plaintiffs' license indefinitely based upon criminal charges against a store employee, and tying the indefinite suspension to the resolution of that third-party's criminal charges is both a substantive and procedural due process violation and an unconstitutional taking under the Fourth and Fourteenth amendments.

Finally, even the conduct does not meet substantive due process violation protects, government action which is arbitrary, capricious and unreasonable is still invalid and this Court should also reinstate Plaintiffs' license on common law state claims as well.

The suspension must be immediately lifted, and damages, fees, and any other penalties be awarded.

## **<u>CONCLUSION</u>**

For these reasons, Plaintiffs respectfully request that this Court issue an Order reinstating their mercantile license, declaring Atlantic City's mercantile licensing ordinances unconstitutional and entering an injunction from enforcement actions pursuant to them, declaring that Plaintiffs' constitutional rights as outlined above were violated, enjoining any further actions against Plaintiffs' mercantile license

based upon the August 16, 2024 incidents, and awarding Plaintiffs full recover for all compensatory damages, punitive damages, nominal damages, attorneys fees and costs.

Respectfully submitted,

KING, MOENCH & COLLINS

DATED: September 10, 2024                     BY: /s/ Matthew C. Moench
                                                   Matthew C. Moench, Esq.