```
1              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
2    _____
                                      :  CIVIL ACTION NUMBER:
3    YASMIN FAHEEM and 24/7 FOOD MART,  :  24-cv-08798
     LLC,                              :
4              Plaintiffs,             :
                                       :
5              v.                      :
                                       :  MOTION HEARING
6    CITY OF ATLANTIC CITY, et al.,    :
               Defendants.             :
7    _____  :


8
          Mitchell H. Cohen Building & U.S. Courthouse
9         4th & Cooper Streets
          Camden, New Jersey 08101
10        September 4, 2024
          Commencing at 2:06 p.m.
11
     B E F O R E:          THE HONORABLE EDWARD S. KIEL,
12                         UNITED STATES DISTRICT JUDGE


13
     A P P E A R A N C E S:
14

15        KING MOENCH & COLLINS, LLP
          BY: MATTHEW C. MOENCH, ESQUIRE
16        51 Gibraltar Drive,  Suite 2F
          Morris Plains, New Jersey 07950
17        For the Plaintiffs

18
          LAW OFFICES OF MICHAEL A. ARMSTRONG
19        BY:  CRISTAL HOLMES-BOWIE, ESQUIRE
          79 Mainbridge Lane
20        Willingboro, New Jersey 08046

21

22    Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
               AnnMarie_Mitchell@njd.uscourts.gov
23                    (856) 576-7018

24    Proceedings recorded by mechanical stenography; transcript
               produced by computer-aided transcription.
25
```

1    **A L S O    P R E S E N T**:

2

3        GLADYS NOVOA, Courtroom Deputy

4                            -   -   -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (PROCEEDINGS held in open court before The Honorable

2    EDWARD S. KIEL at 2:06 p.m.)

3          THE COURT:  Please be seated.  Thank you.

4          Good afternoon, everyone.  We are on the record in

5    the matter of Faheem v. City of Atlantic City.  It's case

6    24-cv-08798.

7          First the appearance on behalf of plaintiffs.

8          MR. MOENCH:  Good morning, Your Honor.  Matthew

9    Moench from the firm of King Moench & Collins on behalf of the

10   plaintiffs.

11         THE COURT:  Okay.  And on behalf of the defendants.

12         MS. HOLMES-BOWIE:  Good afternoon, Your Honor.

13   Cristal Holmes-Bowie of Michael A. Armstrong & Associates on

14   behalf of the defendants, the City of Atlantic City and Dale

15   Finch.

16         THE COURT:  So we're here for an application for an

17   order to show cause with temporary restraints.

18         I put this on as soon as I could and asked the

19   defendants to file their response, which they did at a little

20   past 4:00 yesterday.

21         Let me give you the lay of the land and tell you what

22   I'm thinking, and then I'll hear from the parties.

23         There's been a lot that's happened since the

24   application was filed, and the circumstance that has happened

25   that really puts me in a position where I don't know what I

1    can do today is that there was a hearing last Friday at 2:00.

2         Let me first ask, is anybody intending to put on any

3    witnesses today?

4         MS. HOLMES-BOWIE:  I do not have any witnesses,

5    Judge.

6         MR. MOENCH:  Judge, if Your Honor had questions, this

7    is a family business, so one of the store managers is here,

8    could testify.

9         THE COURT:  Okay.

10        MR. MOENCH:  I don't know that -- based on the legal

11   issues that are currently present that it's necessary, but --

12        THE COURT:  Okay.  Understood.

13        So procedurally where we are is that there was an

14   order to show cause with temporary restraints requested, filed

15   on Thursday, and then there was a hearing on Friday.

16        And I believe that the application for the order to

17   show cause was to require a recision of the suspension pending

18   a hearing.  And the argument was that a summary revocation or

19   a summary suspension of the license to sell, if it was

20   unconstitutional and, therefore, there should be a restraint

21   placed on the continuing of that suspension.

22        But where do we stand now?

23        Let me hear from plaintiff first.  It sounds like you

24   got your hearing, but I don't know anything about the hearing

25   other than a two-page decision.

1          MR. MOENCH:  Yes, Judge.  So we did have a hearing.

2  The hearing was conducted -- I guess it was Thursday or

3  Friday, I don't remember specifically.

4          THE COURT:  I think it was Friday.

5          MR. MOENCH:  That could be right, Judge.

6          So from that aspect, Your Honor is right.  There was

7  a hearing.

8          Now, the result of that hearing was that the license

9  is suspended indefinitely pending outcome of criminal charges,

10  which we have issues with the result, but --

11          THE COURT:  I have issues with that, but --

12          MR. MOENCH:  But taking it one step at a time.

13          The hearing itself, you know, occurred.  It occurred

14  overall within a three-day window.  So we still believe and

15  are advocating today that due process requires notice and

16  opportunity to be heard, but the opportunity to be heard has

17  to be reasonable.  We have to have time to prepare.  And I

18  know there's a whole lot of case law, Judge, that talks about

19  exactly how formal does a hearing need to be, and the process

20  here doesn't have to be like we are in front of a court.  I

21  understand that.

22          In this instance we had no opportunity to OPRA

23  documents.  We had no opportunity to gain information.

24  There's -- there's a lot of comments in some of the charges

25  and the substance of this.

1          But other than the documents, the charging documents

2     themselves, we have no ability to -- had no ability to get any

3     more information to that.

4          And the hearing --

5          THE COURT:  So that at this point, it's not that you

6     didn't have a hearing, it's the process of the hearing itself

7     that you may object to.

8          MR. MOENCH:  Where we are today is we've had a

9     hearing.  We object to the process of the hearing.  We think

10    that hearing should have occurred, you know, more of -- ten

11    days, more of a reasonable time to prepare.  We believe that

12    the information that we were provided was insufficient to

13    properly prepare.  And then the actual current status, that

14    the license is suspended indefinitely pending results of

15    outcomes of criminal charges which may or may not even be

16    related to this, but that's where we are.  So right now --

17         THE COURT:  Is there a further proceeding that's

18    scheduled?

19         MR. MOENCH:  No, Judge.  Right now the way it's been

20    left is that the license is suspended, there are I'll say two

21    sets of charges pending in municipal -- or criminal charges.

22    One is charges against the court -- the store clerk, which are

23    several drug-related charges.

24         I have no information, Judge, other than knowing that

25    that person is a store clerk.  The only document I have is

1   what's been presented to Your Honor that show the charges.  I

2   don't know what connection the alleged activities of that

3   store clerk have to the store itself, or --

4              THE COURT:  Is the store clerk still employed?

5              MR. MOENCH:  No, Judge.

6              THE COURT:  Okay.

7              MR. MOENCH:  I don't know whether any of those

8   activities took place at the store.  I don't have that

9   information.

10             THE COURT:  You don't know what time it happened,

11  what he was selling?

12             MR. MOENCH:  I know what the charges are, but I don't

13  know -- other than the fact that he's employed there, we've

14  asked for body cam footage, we've asked for the reports, all

15  the other stuff to know what connection that store clerk's

16  activity has on the store, assuming he's guilty, because these

17  are just charges.

18             So the problem there, Judge, is that they are serious

19  charges that could take a year to adjudicate, depending on how

20  that particular person gets a lawyer, works through the

21  justice system.

22             Right now -- then there's the other two sets of

23  charges, Judge, that relate to the store -- the owner and the

24  essential manager of the store are cigarette-related charges.

25  It has to do with allegations in municipal court that a

1  certificate wasn't held up --

2      THE COURT:  With the cigarettes and I think the young

3  people call them loosies.

4      MR. MOENCH:  That's it.  I've learned that term now,

5  Judge.  I didn't know it before.

6      THE COURT:  I don't think Atlantic City -- well, I'll

7  hear from Atlantic City in a second, but I don't think

8  Atlantic City is taking the position that they're going to

9  shut down the store for a citation about selling loose

10  cigarettes.  It's about the drug charges.

11      MR. MOENCH:  I won't speak for them.  I think they

12  were --

13      THE COURT:  I would be surprised if they stood up and

14  told me they were going to close down the store for that.

15      MR. MOENCH:  But assuming Your Honor's correct and

16  that's the position, we're now faced with a situation where

17  the store is going to be shut down for an indefinite time

18  period pending the results of whatever occurs in court with

19  the clerk.

20      I have no idea, there's no allegations or information

21  currently presented that connect the clerk's activities with

22  the store ownership or operation.

23      And so now we are now at the mercy of a third party,

24  not an owner, and the criminal justice system between being

25  able to reopen the store.  And meanwhile, it's not just -- if

1  this was going to be a week, we'd come back and we could get

2  damages.  This is a real problem for us, in terms of how do we

3  proceed?  There's no more hearings.

4          THE COURT:  That's my question to you, how do we

5  proceed from here.

6          And I'm willing to have another hearing, have further

7  briefing on it and further evidence presented to me.

8          I don't know what happened at the hearing, and you're

9  telling me that it was not procedurally --

10          MR. MOENCH:  It was --

11          THE COURT:  Hold on a second.

12          MR. MOENCH:  Sorry.

13          THE COURT:  It wasn't procedurally right.

14          Was there a transcript of the hearing?

15          MR. MOENCH:  No, Judge.  It was done by Zoom.  The

16  director of mercantile licensing, Dale Finch, who is the one

17  who issued the suspension initially, was present.  He had the

18  police officer there or officers, I don't remember if it was

19  one or multiple.  And a city attorney was there.  My office

20  was represented with the clients.  And the discussion was

21  relatively informal.  They just said, these are the charges,

22  the ones we just talked about, the drug charge with the clerk

23  and the cigarette charges.

24          They said that they would revoke the suspension if my

25  client agreed to let the Atlantic City Police Department hook

1   into their camera system so they could have a live feed into

2   the business whenever they wanted.  My clients have a separate

3   set of issues with that request or demand to have the, you

4   know, police department be able to --

5           THE COURT:  Sounds like big brother.

6           MR. MOENCH:  Judge, that was my -- but my client is

7   desperate enough that we did ask a bunch of questions about

8   how practically that would work.

9           But at the end of the day, that was what was

10  presented.  We -- and so at the hearing, in front of the same

11  person, as opposed to in front of, say, the city counsel that

12  would get to vote on it at a public hearing.  It was in front

13  of the same administrative person.

14          The decision that Your Honor has that was attached to

15  the submission yesterday, that decision of hearing, that was

16  the first time we received that, was as part of this court

17  submission.  So we saw it, you know, sometime yesterday

18  evening when looking at the papers.

19          And one of the other issues that we have from a

20  process standpoint with the hearing is that this decision

21  references, you know, other incidents in the past, stuff that

22  was never part of the original suspension.  It goes beyond

23  that.

24          And, once again, if they're using those as a basis to

25  revoke or take action against a license, I did get from

 1    Atlantic City some of the complaints.

 2           THE COURT:  Let me ask some questions of Atlantic

 3    City.

 4           MR. MOENCH:  Yes, Judge.

 5           THE COURT:  I know where you stand.  And you've

 6    answered my questions about the process that occurred on

 7    Thursday or Friday.

 8           MR. MOENCH:  Yes, Judge.

 9           THE COURT:  But I have a bunch of questions for the

10    City of Atlantic City.

11           Is it Ms. Holmes-Bowie or just Bowie?

12           MS. HOLMES-BOWIE:  Yes, Holmes-Bowie.

13           THE COURT:  Under what statutory, regulatory or other

14    law is Atlantic City permitted to summarily suspend a

15    merchant's license?

16           MS. HOLMES-BOWIE:  Well, Your Honor, I believe that

17    it's under the police powers that are provided to the

18    municipality by the state legislature.  I believe I cited some

19    of the instances, some of --

20           THE COURT:  Police powers have to -- police powers

21    generally to take away property rights, which this is, has to

22    usually come with some due process rights.  And I'm asking you

23    summarily to do it.

24           MS. HOLMES-BOWIE:  Well, Judge, I think that the

25    reason that it's summarily is it has to do with the

1  dangerousness of the situation, the health and safety to the

2  community.  And that's the reason why they moved so quickly

3  with the suspension.

4          THE COURT:  You talked about -- you didn't quite say

5  it in your brief, but I hear what you're saying is that there

6  was some exigency to the situation, that the public safety was

7  at risk.

8          MS. HOLMES-BOWIE:  Yes, Your Honor.  In this

9  situation, counsel mentioned that this is a store clerk, yes,

10  this is an employee who allegedly is dealing drugs from the

11  location there in the store.  Whether he has a relationship

12  with the owners or not, there's a safety issue.

13          THE COURT:  So as I understand the authority that

14  you're going under, that a municipality has police powers and

15  that police power includes the right to rescind a right to

16  operate a business.  And they can do that, based upon -- what

17  I understand you're saying, based upon exigent circumstances,

18  emergent circumstances for the health and safety of the

19  community?

20          MS. HOLMES-BOWIE:  That's correct, Judge.

21          THE COURT:  Okay.  That's not quite what's in your

22  papers.

23          Well, let me ask you, what standards should I apply

24  in determining whether the Department of Licensing &

25  Inspection decision was correct?  Would that be an abuse of

1    discretion?  Do you have any idea about that?

2            MS. HOLMES-BOWIE:  Well, Judge, if it's an abuse of

3    discretion, I think that they were within their rights to

4    impose the suspension.

5            There are other facts that are associated with this.

6    For example, the mercantile licensing, it basically -- it

7    has -- it expired.  It doesn't even exist, quite frankly, at

8    this point in time.

9            THE COURT:  What do you mean, it expired?

10           MS. HOLMES-BOWIE:  The mercantile license expired in

11   July.  There's been no renewal.

12           THE COURT:  So why did you need to --

13           MS. HOLMES-BOWIE:  Counsel does not even --

14           THE COURT:  Why did you need to suspend it?  Why

15   didn't you just tell them that it's not renewed?

16           MS. HOLMES-BOWIE:  Well, the reason that they took

17   this extra step is because of the criminal activity and

18   because of the ongoing criminal activity.

19           THE COURT:  Well, I think there's something else

20   going on.  You talk about exigent circumstances.  And the

21   decision cites to a criminal charge that was levied on August

22   16th against a clerk.  Right?

23           MS. HOLMES-BOWIE:  Yes.

24           THE COURT:  Right?  That's what the decision says.

25           But the suspension didn't happen until August 29th,

1    which is -- I'm sorry, when was the suspension?

2            MR. MOENCH:  August 26th, Judge.

3            THE COURT:  August 26th.  So there's this grave

4    danger to the community, and this person has been arrested.

5    And you can't have a hearing within ten days of the person's

6    arrest and say, hey, come on in, we want to talk to you and we

7    want to give you the evidence that we have and why your

8    license should be suspended?  It was that emergent that the

9    town had to wait ten days to suspend this person's license?

10           MS. HOLMES-BOWIE:  My understanding is that the

11   arrest took place in closer time.

12           THE COURT:  It says August 16th on the decision from

13   the City of Atlantic City.

14           Is that right, Mr. Moench?

15           MR. MOENCH:  Judge, I don't know.

16           THE COURT:  Because you haven't been provided --

17           MR. MOENCH:  I don't know.  I have what's provided

18   there, Judge.

19           THE COURT:  Also, I did note that I didn't get the

20   police report for that August 16th arrest with your papers.  I

21   got all the other reports.

22           Any reason you didn't include the August 16th one?

23           MS. HOLMES-BOWIE:  I didn't have it at the time that

24   I submitted the papers.

25           THE COURT:  Well, let me ask you, would ten days have

```
 1   been enough to put together a hearing where you provide notice

 2   and then you provide whatever information and evidence that

 3   you have to the other side and have them have an opportunity

 4   to prepare for that hearing?

 5            MS. HOLMES-BOWIE:  I think that that's sufficient

 6   time.

 7            THE COURT:  Yes.  It sounds sufficient.

 8            MS. HOLMES-BOWIE:  I believe the reason for having

 9   the hearing on a more expedited basis had more to do with the

10   fact of this hearing, to make sure it took place before this

11   hearing occurred.

12            THE COURT:  Yes.  Because he filed an order to show

13   cause.  That's why you got on your horse and started working

14   hard.  Right?  To get the hearing in in time for this hearing?

15            MS. HOLMES-BOWIE:  That's -- I understand that they

16   wanted to have it on an expedited basis.

17            THE COURT:  Well --

18            MS. HOLMES-BOWIE:  And they offered it.  They don't

19   have to request it.  The City can have it, and they notified

20   them.

21            THE COURT:  Let me ask you a totally different

22   question.

23            If the -- well, was the license suspended pursuant to

24   some provision of the code of Atlantic City?

25            MS. HOLMES-BOWIE:  It was suspended pursuant to their
```

1    code.

2    THE COURT:  And the code that was provided, I have it

3    here, was 170-13(A).  Right?

4    MS. HOLMES-BOWIE:  Yes.

5    THE COURT:  And that says that the Mercantile

6    Licensing Division of Atlantic City, based upon good cause,

7    can suspend, cancel or revoke a license, good cause for

8    suspension, and it lists a few things.  It doesn't provide for

9    any process.

10    Do you see any problem with this code permitting the

11    Mercantile Licensing Division of Atlantic City to have really

12    unfettered discretion as to what they think is good cause for

13    suspension without any process being in there, like we're

14    going to give you ten days' notice and we're going to have a

15    hearing?

16    MS. HOLMES-BOWIE:  Well, I understand what Your Honor

17    is saying.  I don't know what the entire -- what the code --

18    the entire code of Atlantic City says with respect to

19    hearings, yeah.

20    THE COURT:  Well, I took a pretty good look at it.  I

21    took a pretty good look at it, at Section 170.  I presume

22    everything about licenses is in there.  And the only

23    opportunity to be heard under this statute is after a decision

24    is rendered, it says that the licensee can then file an appeal

25    within 30 days.

*United States District Court*

1        Does that sound constitutional to you?

2        MS. HOLMES-BOWIE:  Well, it may not be -- it doesn't

3   sound constitutional, but I think that there are also

4   circumstances where the City should be able to act.

5        THE COURT:  Right.

6        MS. HOLMES-BOWIE:  In the case of where the citizens'

7   safety is at risk, where there is criminal activity that is

8   ongoing, and there's a history of the -- and not just minor

9   criminal activity, like we're talking about loosies, there's

10  been significant criminal activity.  There have been other

11  drug cases.  There have been homicides at --

12       THE COURT:  I read every single -- I read everything

13  that you gave to me, and the police reports that you gave to

14  me about drug activity says -- let me quote for you what every

15  police report seems to say.

16       I'm looking at ECF Number 7, page 13.  It's a police

17  report on November 17, 2023.

18       "The area in and around the aforementioned location

19  is well known for its heightened levels of criminal activity

20  and quality of life complaints.  These crimes and complaints

21  can range from, but are not restricted to, public

22  intoxication/urination, drug trafficking and violent crimes

23  (homicides, shootings, and assaults).  Additionally, a large

24  number of arrests for narcotic related offenses have/are made

25  in and around this area."

1          So if this store is in that area and there's drug

2    arrests in that area, how come -- are there other stores that

3    have been shut down because of drug activity in that area?

4          MS. HOLMES-BOWIE:  I don't have that information,

5    Judge.

6          THE COURT:  Isn't that important to know?

7          MS. HOLMES-BOWIE:  I understand.

8          THE COURT:  You're going to have to defend the

9    actions of Atlantic City.  And you have a statute that says

10   maybe it's unconstitutional, maybe not.

11         If the code itself is unconstitutional in the due

12   process that it provides, is a suspension in this case also

13   unconstitutional?  Would that lead to a logical conclusion?

14         MS. HOLMES-BOWIE:  I don't know that I agree with

15   that, Judge.  I understand what you're saying.

16         THE COURT:  So I asked you before, under what law,

17   under what code was the suspension done?

18         MS. HOLMES-BOWIE:  As far as I know --

19         THE COURT:  It was 170.  Right?

20         MS. HOLMES-BOWIE:  Yes.  That's my understanding.

21         THE COURT:  If 170 is unconstitutional because it

22   doesn't provide due process, it's not clear -- and I'll get to

23   the clear portion in a second -- is the suspension itself

24   unconstitutional?  You're saying maybe not?

25         MS. HOLMES-BOWIE:  Well, again, it's -- I understand

1  the question, but I believe that there are other exigent

2  circumstances for the suspension for the activity.

3          THE COURT:  So how is a merchant supposed to know

4  when they get a notice of suspension of what to do in order to

5  try to have that suspension, that summary suspension

6  overturned and have a hearing?

7          MS. HOLMES-BOWIE:  Well, Judge, I think that they --

8  basically the same as what happened here, which was to get in

9  contact with the --

10         THE COURT:  That's not the way it works.  Right?

11 That's not the way it works.

12         MS. HOLMES-BOWIE:  I understand.

13         THE COURT:  You as the City has the authority, the

14 legal law enforcement authority of the City, have to tell its

15 citizens and its merchants what the law is.  Right?

16         MS. HOLMES-BOWIE:  Yes.

17         THE COURT:  Okay.  Also, nobody briefed the issue,

18 and I think that we can come to a head on the issue as to

19 whether the statute itself is unconstitutional or the code

20 itself is unconstitutional.  I know that it's in the complaint

21 that you want that declaration, but procedurally we're not

22 there.  Procedurally we are at a point where you're asking for

23 a TRO.  And as I said, I would appreciate more information on

24 the TRO and then we'll talk about where we're going to go on

25 that.

1          Let me ask you about other portions of the code,

2    ma'am.

3          It says, "Good cause for suspension, cancellation or

4    revocation shall include, but is not limited to:  The

5    existence of unsanitary conditions, noise, disturbances or

6    other conditions at, near, or in the premises which cause or

7    tend to create a public or private nuisance which injuriously

8    affects the public health, safety or welfare of the citizens

9    of the City of Atlantic City."

10          So I said that before, that the police have

11   acknowledged this is a high-crime area.  And so this provision

12   seems to say that if there is that kind of activity near the

13   premises, that that's good cause.

14          What do you think about that?

15          MS. HOLMES-BOWIE:  Well, I understand that it's

16   saying near, but in this case it's within the facility, within

17   the facility that is licensed.

18          THE COURT:  Right.  That's an application of the

19   code.  We're talking about how the code is written.

20          MS. HOLMES-BOWIE:  I understand.

21          THE COURT:  It gives really a lot of discretion to

22   the Mercantile Licensing Division to do what they want.  If

23   they think, hey, there's drug dealing going on around this

24   store and we feel like closing them down, this code permits us

25   to summarily, summarily without a hearing, close them down ten

1  days later after the offense.

2          I don't know.  It was a very long time ago that I

3  went to law school, but that doesn't sound like due process to

4  me.

5          And we can talk about how we're going to proceed on

6  the case, but my suggestion to you, Ms. Holmes-Bowie, is you

7  go back to your clients and you talk about our conversation

8  today, and maybe we can have a further discussion later about

9  the statute.

10         I'm going to permit further briefing and advise me

11 what happened, but I'm going to do it relatively quickly.

12         Let me hear from you, Mr. Moench, there was a mention

13 that the license itself had expired.

14         MR. MOENCH:  Yes, Judge.  So my understanding is that

15 there's an electronic portal for applying for your renewal.

16         THE COURT:  Okay.

17         MR. MOENCH:  This license happens to come up I think,

18 based on the one that was provided to us, last year's license

19 was up I think July 31st of this year.

20         That my clients have applied through the online

21 portal and that it is still pending -- my understanding is

22 other licenses are as well, but I don't have -- that's the

23 information that was provided to me by my clients.

24         Other than the screenshot that they sent me showing

25 that they had applied and it's pending, I don't have any more

1    information in terms of --

2          THE COURT:  Ms. Holmes-Bowie, any idea?  Plaintiffs'

3    counsel says that plaintiff applied for it, it went on the

4    portal by July 31st.  I do think that's when licenses are

5    renewed, applications are put in in New Jersey.

6          MS. HOLMES-BOWIE:  I have no information other than

7    that the license expired on July 31st.  I don't have any

8    information in terms of whether there is an application

9    pending or whether they submitted an application.  I don't

10   have any of that information.  That's new to me.

11         THE COURT:  Well, to me it sounds like that the town

12   thought that it was in effect; otherwise, they wouldn't have

13   issued a suspension.  Right?

14         You're going to have to defend this code.

15         MS. HOLMES-BOWIE:  I understand that, yes.

16         THE COURT:  You're going to have to defend this code.

17   And if -- well, I'll leave it at that.

18         How would you like to proceed, sir?

19         MR. MOENCH:  Yes, Judge.  So just a few very brief

20   things.

21         I want to point out, counsel had mentioned about, you

22   know, that the clerk -- the alleged drug activity from the

23   clerk was at the store location.

24         I just want to point out that the complaint -- the

25   only information I have is the complaint against the store

1  clerk makes no reference to drug activity at the store.  I'm

2  not saying that is or isn't true.  I'm just saying that the

3  only complaint that I have which we attached to our complaint

4  and motion was just simply that this person was arrested for a

5  variety of substances.  It has no reference to saying out of

6  the store, at the store.  I have, you know --

7          THE COURT:  That's why I thought it was interesting

8  that the police report from that arrest was not attached.

9          MR. MOENCH:  Right.  So I can't defend that issue,

10  which is part of the problem.

11          Counsel mentioned about having the hearing quickly.

12          Well, when you're already suspended, it's -- what are

13  your options?  Not have a hearing and you're suspended

14  indefinitely, or I come before Your Honor and say, Judge, we

15  haven't had a hearing, and counsel says, we offered a hearing,

16  and Your Honor says, you know, why didn't you have one.

17          So the other thing --

18          THE COURT:  Hold on.  And I understand that.

19          MR. MOENCH:  Yeah.

20          THE COURT:  That every day that this store is closed

21  is a problem to your client.

22          But procedurally where we are is an application for a

23  TRO that says that he wasn't provided due process.  And now

24  we've had a hearing, which may be due process or not, but

25  we're at a different procedural standpoint where you have to

1  tell me whether -- you need to tell me whether you need

2  something based upon that hearing or something was wrong with

3  that hearing.  And if you want to move now, I'll certainly

4  give you the opportunity to move as to whether this ordinance

5  itself is constitutional or not.

6          MR. MOENCH:  Yes, Judge.  On both fronts.  Right now

7  the store is shut down indefinitely.  So we're asking for

8  relief -- we'd ask the Court for relief from both the hearing

9  itself being procedurally deficient.  It was there was but it

10 was on short notice without the information necessary to have

11 a meaningful opportunity to be heard.

12          And, Your Honor, on the issue of the statute itself

13 being unconstitutional on its face, the statute -- counsel

14 mentioned it in her brief.  It's NJSA 40:52-1(J).  That is the

15 general statutory provision which allows municipalities to

16 license entities.

17          What is not cited there is 40:52-2.

18          THE COURT:  What's that?

19          MR. MOENCH:  NJSA 40:52-2 specifically says that when

20 a license is issued pursuant to 52-1, a municipality may take

21 action, and it specifically says, upon notice and opportunity

22 to be heard.

23          So the very statutory scheme which allows a

24 municipality to license specifically says by New Jersey law

25 that if you want to take action against a license, it has to

*United States District Court*

1    be on notice and pursuant to be heard.

2            If you search Atlantic City's Municipal Code, and you

3    search as I've done it, I have it here, I can give you a

4    number of provisions, there's other licensing provisions

5    throughout Atlantic City that -- other different types of

6    licenses and things like that where the ordinance provisions

7    specifically say, we might take action against a boardwalk

8    entertainer upon notice and opportunity to be heard.  We might

9    take action against a secondhand store, you know, a pawn shop,

10   upon notice and opportunity to be heard.

11           So Atlantic City has other provisions and other

12   licenses that conform, at least on the surface, at least on

13   the face of it, with the statute that gives them the authority

14   to do it and conforms on the face of it with constitutional

15   due process.  How it's applied might be a separate issue, but

16   at least facially.

17           Here this provision has zero notice and opportunity

18   to be heard and actually specifically says in the body of the

19   ordinance that your opportunity to be heard is after action is

20   taken.

21           So this Court on that alone should invalidate the

22   proceeding which occurred pursuant to an unconstitutional

23   statute, and the store should be reopened until Atlantic City

24   fixes its ordinance and comes up with a constitutional scheme.

25   And then if they decide to take further action pursuant to a

1    constitutional scheme, we can then debate the merits of

2    whatever action they do or don't take.

3              THE COURT:  I understand.  Understood.

4              Let me ask you one other question that came to mind.

5    And I asked you what standard to apply on a decision.  And I'm

6    scratching my head a bit.

7              What logic is there in requiring the store to wait

8    until the criminal charges against a third party -- I

9    understand that it may have been a clerk -- to wait until

10   those charges are resolved before re-looking at this thing?

11             MS. HOLMES-BOWIE:  I don't know that that was --

12   well, two things.

13             THE COURT:  It says -- and let me read you.

14             "Upon a decision from the criminal court the issue of

15   the removal of a mercantile license will be re-visited and a

16   determination will be made as to either continue revocation or

17   allow renewal of the mercantile license."

18             Why would that be contingent upon somebody else's

19   criminal case?

20             MS. HOLMES-BOWIE:  Well, Judge, I don't know that

21   it's contingent upon that individual's criminal case.  It may

22   also be contingent upon the other --

23             THE COURT:  The loosies?

24             MS. HOLMES-BOWIE:  That's a possibility as well.  I

25   don't know that that's -- that the case involving the clerk is

```
 1   the one that that references.  And I don't have any

 2   information from that indicating that.

 3           THE COURT:  Shouldn't --

 4           MS. HOLMES-BOWIE:  And obviously I know that those

 5   cases would take quite a while to work their way through the

 6   system, so --

 7           THE COURT:  Maybe you should ask for a clarification

 8   on that.  I mean, to say that a licensee has to wait for the

 9   resolution of a criminal case of its former clerk before it

10   can even be reconsidered for reinstatement of its license

11   seems a little odd and maybe arbitrary and capricious.  Right?

12   I don't know how they're related.  If it's just related to the

13   loose cigarettes, then I'm sure that's something a fine can be

14   paid and off we go.

15           I would suggest -- go ahead.

16           MR. MOENCH:  I'm sorry, Judge.  I don't mean to be

17   over --

18           THE COURT:  Go ahead.

19           MR. MOENCH:  I want to point out the decision that's

20   attached at Exhibit A, paragraph 1 just talks about the

21   charges against the clerk.

22           The entire decision upon which this indefinite

23   suspension is based makes zero mention, doesn't even note the

24   cigarette violations or any violations against the store owner

25   or family member.  This suspension based on this exhibit and
```

```
 1   the decision dated September 3rd is based solely upon the

 2   charges against the clerk which they list out there, and then

 3   they list, you know, other stuff that occurred in the past.

 4            THE COURT:  Let me ask one more question to

 5   Ms. Holmes-Bowie.

 6            MS. HOLMES-BOWIE:  Uh-huh.

 7            THE COURT:  Do you know anything about this arrest,

 8   this August 16th arrest, who it was?

 9            MS. HOLMES-BOWIE:  In terms of who was arrested?

10            THE COURT:  Yes.

11            MS. HOLMES-BOWIE:  I understand it to be the store

12   clerk who was working in the store and --

13            THE COURT:  And it was drugs being sold in the store?

14            MS. HOLMES-BOWIE:  In the store by the clerk.

15            THE COURT:  Where did you get that information from?

16            MS. HOLMES-BOWIE:  From the City's officials.

17            THE COURT:  The City's --

18            MS. HOLMES-BOWIE:  The City officials.

19            THE COURT:  Which City official?

20            MS. HOLMES-BOWIE:  The City attorney.

21            THE COURT:  The City attorney?

22            MS. HOLMES-BOWIE:  One of the City attorneys, yes.

23            THE COURT:  Any reason that you didn't attach that

24   police report to here?

25            MS. HOLMES-BOWIE:  No, Judge.  I just did not have
```

1  it.  And honestly, I didn't recall that I hadn't attached it

2  until today.  So I didn't attempt to supplement, but I can.

3      THE COURT:  Any reason you can't turn over to

4  plaintiff's counsel by tomorrow any documents that you have

5  that support this -- that supports this suspension?

6      MS. HOLMES-BOWIE:  Well, I can provide the -- well,

7  the police reports that can be released, that would be public

8  information.  The only concern I think that the City would

9  have is in terms of, you know, prosecution --

10      THE COURT:  I'm sorry, I couldn't hear you there.

11      MS. HOLMES-BOWIE:  I'm sorry, of any prosecution of

12  that particular matter.

13      So I know that the information that's on -- that's

14  there with the complaint, any other information that would be

15  public in the police reports, yes, I can turn that over.

16      THE COURT:  Well, I think Mr. Moench when he first

17  got into the case asked the City for that -- asked for

18  information.  And that was back on August 27th.

19      Do you not have that?

20      MS. HOLMES-BOWIE:  I don't have that.

21      THE COURT:  There's a letter from Mr. Moench to Dale

22  Finch, Director of Licensing & Inspections, that's number ECF

23  number 1, page 18, August 27, 2024.

24      And Mr. Moench says in the third paragraph, "Finally,

25  my clients demand a hearing prior to any suspension, as

1    referenced in your letter.  In advance of that hearing, my

2    clients demand that you provide any documents, evidence, or

3    other basis to support your justification for taking action

4    against 24/7 Food Mart's Mercantile License."

5            You've never saw that until today?

6            MS. HOLMES-BOWIE:  No, Judge, I did not.

7            THE COURT:  They're certainly entitled to that

8    information.  Right?

9            MS. HOLMES-BOWIE:  Yes.

10            THE COURT:  Prior to a hearing?

11            MS. HOLMES-BOWIE:  Yes.  To the extent the City can

12    provide it.

13            THE COURT:  Of course, of course.  Privilege,

14    confidentiality and all those things aside.  Public -- well,

15    the police report would certainly be a public document that

16    you can provide to them.  Right?

17            MS. HOLMES-BOWIE:  Yes.  There may be certain, I'm

18    sure, redactions, but...

19            THE COURT:  Certain what?

20            MS. HOLMES-BOWIE:  There may be certain redactions

21    that would be, you know, otherwise confidential, identifiers,

22    that kind of...

23            THE COURT:  I'm going to put in my order that you

24    provide those documents responsive to Mr. Moench's request by

25    Friday, close of business on Friday, September 6th.

1          When did you want to file your follow-up brief?

2          MR. MOENCH:  Judge, I can file it whenever Your Honor

3   wants.

4          THE COURT:  Monday?

5          MR. MOENCH:  I can file it Monday, Judge.

6          THE COURT:  Okay.  File a brief by Monday.  That's a

7   supplemental brief.

8          I presume that as part of it you're going to move to

9   find the code unconstitutional.  Please do your homework and

10  give me some good cases.

11         You as well, Ms. Holmes-Bowie.

12         And then, Ms. Holmes-Bowie, why don't you file your

13  response by the 13th.  That should give you an equal amount of

14  time.

15         We're going to get back together September 17th at

16  3:00 p.m.

17         If you want to present testimony, please advise my

18  courtroom deputy who you're going to present and just file a

19  letter with any kind of summary of the testimony that you

20  expect.  All right?

21         Anything further, Mr. Moench?

22         MR. MOENCH:  Judge, just on the brief, you mentioned

23  the argument, the unconstitutionality ordinance.  I would also

24  plan on raising issues with the actual suspension.

25         THE COURT:  Yes.  Of course.

 1          MR. MOENCH:  I just want to make sure I cover both.

 2          THE COURT:  Of course.

 3          MR. MOENCH:  Thank you.

 4          THE COURT:  We've done a bit of research here.

 5          Ms. Holmes-Bowie, I would refer you to a case,

 6   *Cloister East, Inc. v. New York State Liquor Authority.*

 7   That's 483 F. Supp. 3d 221, Southern District of New York in

 8   2020.

 9          And *Padberg*, P-A-D-B-E-R-G, *v. McGrath-McKechnie*,

10   M-C-K-E-C-H-N-I-E, 108 F. Supp. 2d 177 (2000).

11          I think, Ms. Holmes-Bowie, that will give you a good

12   roadmap as to your further discussions with Atlantic City and

13   what I think that they should do.  And I think you're reading

14   between the lines of what I'm saying.

15          MS. HOLMES-BOWIE:  Yes, Judge.

16          THE COURT:  Okay.  Anything further for you, ma'am?

17          MS. HOLMES-BOWIE:  No, sir.

18          THE COURT:  Okay.  Thank you very much.  We're off

19   the record.

20          Let me see counsel in my conference room for a

21   second.

22          COURTROOM DEPUTY:  All rise.

23          (A recess occurred at 2:45 p.m. to 2:51 p.m.)

24          THE COURT:  We're back on the record.

25          I took an opportunity to have a discussion with

*United States District Court*

1  counsel, and I think it would be beneficial for both parties

2  to be able to have some discussion amongst each other to try

3  to resolve this matter.

4        So I'm going to direct the parties and their

5  representatives with settlement authority to meet in person

6  and make a good faith attempt to resolve this matter.  And

7  that could be done on or before September 11th.  That's next

8  Wednesday.

9        But your brief will still be due, sir, on that Monday

10 beforehand.

11       So I will direct the parties to at least give a good

12 faith effort, meet in person by on or before September 11th.

13 Okay?

14       MR. MOENCH:  Thank you, Judge.

15       MS. HOLMES-BOWIE:  Thank you, Judge.

16       THE COURT:  All right, everybody.  We're off the

17 record.  Have a good day, everybody.

18       COURTROOM DEPUTY:  All rise.

19       (Proceedings adjourned at 2:52 p.m.)
         - - - - - - - - - - - - - - - - - - - - - -
20 **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
         - - - - - - - - - - - - - - - - - - - - - -
21       I certify that the foregoing is a correct transcript

22 from the record of proceedings in the above-entitled matter.

23

24 */S/ Ann Marie Mitchell        25th day of September, 2024*
   *CCR-RDR-RMR-CRR*
25 *Court Reporter/Transcriber*

*United States District Court*