**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ : | CIVIL ACTION NUMBER: |
| YASMIN FAHEEM and 24/7 FOOD MART, : | 24-cv-08798 |
| LLC,  : | |
|     Plaintiffs,  : | |
|   : | |
|     v.  : | |
|   : | MOTION HEARING |
| CITY OF ATLANTIC CITY, et al.,  : | |
|     Defendants.  : | |
| _____ : | |

          Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
          Camden, New Jersey 08101
          September 17, 2024
          Commencing at 3:12 p.m.

**B E F O R E**:          **THE HONORABLE EDWARD S. KIEL,**
                          **UNITED STATES DISTRICT JUDGE**


**A P P E A R A N C E S**:


          KING MOENCH & COLLINS, LLP
          BY: MATTHEW C. MOENCH, ESQUIRE
          51 Gibraltar Drive,  Suite 2F
          Morris Plains, New Jersey 07950
          For the Plaintiffs


          LAW OFFICES OF MICHAEL A. ARMSTRONG
          BY:  CRISTAL HOLMES-BOWIE, ESQUIRE
          79 Mainbridge Lane
          Willingboro, New Jersey 08046


      Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
              AnnMarie_Mitchell@njd.uscourts.gov
                    (856) 576-7018

      Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

1    **A L S O   P R E S E N T**:

2

    GLADYS NOVOA, Courtroom Deputy

3                                - - -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held in open court before The Honorable
 2    EDWARD S. KIEL at 3:12 p.m.)
 3              THE COURT:  Good afternoon, everyone.  Please be
 4    seated.
 5              We're on the record in the matter of Faheem v. City
 6    of Atlantic City.  It's case 24-cv-08798.
 7              First, the appearance on behalf of plaintiff, please.
 8              MR. MOENCH:  Good afternoon, Your Honor, Matthew
 9    Moench from the firm of King Moench & Collins on behalf of
10    plaintiffs.
11              THE COURT:  Good afternoon.  And on behalf of
12    defendants.
13              MS. HOLMES-BOWIE:  Good afternoon, Your Honor,
14    Cristal Holmes-Bowie of Michael A. Armstrong & Associates on
15    behalf of the City of Atlantic City and Dale Finch.
16              THE COURT:  We're here after an initial hearing on a
17    temporary restraining order application which was continued to
18    today to provide for extra briefing, so I am considering today
19    an application for a preliminary injunction and the hearing on
20    that.  I think that's where we stand.
21              So since the briefing that I presume nothing further
22    has happened, Mr. Moench?
23              MR. MOENCH:  No, Judge.  The parties did meet to talk
24    about a settlement.  We did not settle, Judge.
25              THE COURT:  Yeah.  A resolution.  I don't want to
```

1    hear --

2            MR. MOENCH:  I was going to say, other than letting

3    Your Honor know that we did meet.  And that's it, Judge.

4            THE COURT:  Okay.  The parties did meet pursuant to

5    my order.  They've tried their best, and we haven't reached a

6    resolution.

7            Okay.  So I do have some questions, mostly for

8    Ms. Holmes-Bowie, and I'll get right to it.

9            The last time that we got together, I asked you for

10   an explanation as to how the resolution of the criminal action

11   against the store clerk is tied to the reinstatement or the

12   potential reinstatement of the license.  And I don't think I

13   got an answer to it.  I didn't see it in your papers.  And I

14   have a lot of difficulty understanding how the City can impose

15   an indeterminate amount of time without -- for a period that

16   could go on for years without giving the plaintiffs an

17   opportunity to try to have their suspension rescinded.

18           How is that reasonable?

19           MS. HOLMES-BOWIE:  Well, Judge, I think the reason

20   for that is that the -- this is not the first time that

21   there's been criminal activity in this location, at this

22   convenience store.

23           THE COURT:  Well, the only other information that I

24   have criminal activity in the premises regarding the operation

25   of the premises, not of third parties coming in, is a clerk

```
 1   that had some issues in 2018, and there was an issuance of a
 2   search warrant or something like that.
 3           MS. HOLMES-BOWIE:  Yes.  There was a search warrant.
 4   There was significant drugs that were located there.
 5           THE COURT:  So aren't you trying to do the same
 6   thing, which I think from an initial glance at it seems
 7   unreasonable?  You're trying to tie the criminal activities of
 8   third persons, including two homicides, to the activity of
 9   this store.  And now what you're trying to do is tie the
10   reinstatement of the license to a criminal proceeding that's
11   going on against a third party.  Right?  Where's the
12   reasonableness?  Where's the logic?
13           MS. HOLMES-BOWIE:  Well, I -- I'm sorry.
14           THE COURT:  Go ahead.  Where is the logic in that?
15           MS. HOLMES-BOWIE:  Judge, I think the logic is that
16   typically an individual is responsible for what goes on in
17   their premises.
18           THE COURT:  No question about that.
19           MS. HOLMES-BOWIE:  And they are also responsible for
20   the conduct of their employees as well.  They're expected to
21   have knowledge of what goes on in their business, and they're
22   expected to also be responsible if that person is conducting
23   illegal activities.  That's the position of the City.  And
24   then --
25           THE COURT:  And their responsibility then, what they
```

1   do is when they find out about it, they fire them.

2          So is that what any -- hold on, let me ask you a

3   question.

4          Is that what any corporation -- let's say an

5   executive sexually harasses an employee.  Right?  That

6   employee gets fired.  There's no -- and whatever repercussions

7   come of it, but do you continue then to say to this company,

8   you're responsible ongoing beyond that?

9          MS. HOLMES-BOWIE:  Well, Judge, they may not be

10  responsible ongoing, but they're certainly put on notice as to

11  being aware of what's going -- paying attention in terms of

12  what's going on in their premises.

13         THE COURT:  Here's the difference.  What you're doing

14  is punishing them going forward for an indeterminate period of

15  time.

16         How are they supposed to try to get their license

17  back?  What steps can they take?

18         I thought of some -- let me throw some of them out

19  there for you.  Firing their employee.  Putting additional

20  cameras on.  Agreeing with the City to regularly monitor the

21  security cameras.  Right?  Doing background checks on their

22  employees.

23         They could do all of these things that could seem

24  fairly reasonable in order to apply for reinstatement of their

25  license, but the sole contingency that you have is that this

1    guy's criminal proceeding is resolved.  Right?  That's the

2    only criteria.

3         MS. HOLMES-BOWIE:  I don't know that that was the

4    only criteria in terms of how they attempted to resolve it.  I

5    think some of the things that Your Honor mentioned are some of

6    the items that they proposed.

7         THE COURT:  I'm sorry.

8         MS. HOLMES-BOWIE:  Granted, that was at the

9    post-deprivation hearing.

10        THE COURT:  That's the only opportunity that they're

11   going to have.  The first opportunity that they're going to

12   have to have this revisited is after the resolution of the

13   criminal matter.  Let me ask you about that.

14        What is the relevancy of the resolution of the

15   criminal matter to their license?

16        MS. HOLMES-BOWIE:  Well, Judge, I think the relevancy

17   is that -- again, that they are the owners and this is their

18   premises, and they're expected to know what's going on there

19   and to make sure -- part of having a license, one of the

20   issues of having a license is that you're conducting a lawful

21   business, that you're not conducting unlawful activity there.

22        It's not the City's obligation to figure out who is

23   conducting the unlawful activity there.  But if there is

24   illegal activity there, that's part of the reason that you

25   would not get a license.

```
 1            THE COURT:  You haven't answered my question.

 2            MS. HOLMES-BOWIE:  Okay.

 3            THE COURT:  What does the resolution of the third

 4    party's criminal proceeding have to do with the reinstatement

 5    or the potential reinstatement of the license or even having a

 6    hearing about it?

 7            Let me give you an example.  Is there a difference if

 8    the person is found guilty or not guilty?

 9            MS. HOLMES-BOWIE:  I think there would be a

10    difference.

11            THE COURT:  Well, now -- okay.  He's found not

12    guilty, and he wasn't dealing drugs in this place.  Now,

13    you've suspended their license for two, three years while this

14    criminal proceeding goes forward.  Right?

15            MS. HOLMES-BOWIE:  If that's the action that the City

16    is taking, that would be correct, Judge.

17            THE COURT:  So you're defending the actions of

18    Mr. Finch.  Finch?

19            MS. HOLMES-BOWIE:  Mr. Finch.

20            THE COURT:  It would be great if Mr. Finch was here

21    today, because I would have a lot of questions for him.

22    Right?

23            So you're defending this and saying, hey, they're

24    going to be revoked, suspended, we're never going to revisit

25    it again until this third party's criminal proceeding is
```

United States District Court

```
 1  resolved.  Right?
 2         That's the position that Atlantic City is going to
 3  take, and that's the position they're going to stand on?
 4         MS. HOLMES-BOWIE:  Well, Judge, if that's what his
 5  decision indicated -- and I don't know that he's the final
 6  word, I'll put it that way, in terms of --
 7         THE COURT:  He's the final word in Atlantic City
 8  according to the code.
 9         It says that his decision can be appealed within 30
10  days.  It doesn't say who it can be appealed to.  It says that
11  that decision then, there can be an appeal to the court -- let
12  me see what it says.
13         The director's decision may be appealed by the
14  applicant licensee to a court of competent jurisdiction.
15         But the appeal process in Section 170-15 of the
16  Atlantic City Code says that the appeal of the suspension goes
17  to the Director of Licensing and Inspections, the very person
18  who suspended it in the first instance.
19         Does that sound like an appeal to you?
20         MS. HOLMES-BOWIE:  I don't think that's considered a
21  court of competent jurisdiction.
22         THE COURT:  I'm sorry?
23         MS. HOLMES-BOWIE:  I don't think that the Mercantile
24  Licensing Department is the court of competent jurisdiction
25  that they're referring to.
```

1          THE COURT:  No, but the appeal goes to him.

2          So Director Finch issued the suspension August 26th,

3    I think.  Right?  And then the plaintiffs asked for an appeal.

4    And the appeal went to Mr. Finch.

5          Let's say you were in this court, and I issue a

6    decision that you don't like, and you want to file an appeal.

7          Would you file that appeal with me again, or would

8    you go to the Third Circuit?

9          MS. HOLMES-BOWIE:  No; but, Judge, there are

10   situations where a court is -- where someone does go back for

11   reconsideration of a situation to the same judge.  That does

12   happen.

13         THE COURT:  Well, of course reconsideration.

14         But shouldn't somebody different than the director,

15   the person who actually issued the suspension, review his

16   decision?  That would only make sense.  Right?

17         MS. HOLMES-BOWIE:  That does.  I'm not going to

18   disagree with that.

19         THE COURT:  Let me ask you, I do think I have some

20   other issues.

21         There were a number of incidents that Director Finch

22   cited.  And he said that there was a homicide in October 2022,

23   another homicide in 2023, CDS distribution around the

24   premises.

25         Why should the store owner be punished because

1   Atlantic City can't keep their streets safe?  Right?

2           MS. HOLMES-BOWIE:  Well --

3           THE COURT:  Because what the director is saying is,

4   hey, people are dealing drugs outside the store, in and around

5   the store, and people have been murdered around the store, so

6   now we're going to punish the store owner.

7           Where is the logic in that?

8           MS. HOLMES-BOWIE:  Well, I understand that, you know,

9   it doesn't appear there's logic with respect to in and around.

10  But when there's been criminal activity in that premises,

11  the -- really, the only option that the City has with respect

12  to enforcing its code to say that you're supposed to conduct

13  business in a lawful manner is to the revocation or the

14  suspension of the license.  And --

15          THE COURT:  So why does Director Finch then use

16  incidents that happened outside of the store for his support

17  to suspend the store's license?

18          MS. HOLMES-BOWIE:  I can't answer that, Judge.

19          THE COURT:  Is there any logic to that?

20          MS. HOLMES-BOWIE:  Except to say that I believe that

21  he's pointing to the fact that there's significant criminal

22  activity around the premises and --

23          THE COURT:  But is that the fault of the plaintiffs?

24          MS. HOLMES-BOWIE:  I'm sorry?

25          THE COURT:  Is that the fault of the plaintiffs?

1          MS. HOLMES-BOWIE:  We actually don't know, because we

2     don't know whether the plaintiffs are involved or consenting

3     to or agreeing to the drug activity that's taking place

4     outside of the premises.

5          THE COURT:  Ms. Holmes-Bowie, you can't standing up

6     in court and say we don't know but because it's going around

7     the area, we're going to punish the plaintiff.  Right?  That's

8     not a legal justification.

9          And then one of the questions that I asked you before

10    is -- and I don't know whether you looked into it, at the last

11    hearing I asked, has any other licensee in that high crime,

12    high drug traffic area been suspended?

13         MS. HOLMES-BOWIE:  I actually don't recall that

14    question, Judge, but I can look into that.  I don't know the

15    answer to that.

16         THE COURT:  I mean, if you're going to punish the

17    plaintiff for things that happened near the store, then I

18    presume that other store owners near that store are also being

19    punished.

20         MS. HOLMES-BOWIE:  I don't have that information.

21         THE COURT:  Yes.  And I go back to the point of, you

22    know, why would Director Finch go out of his way to cite to

23    incidences that have nothing to do with the operation of the

24    store to support his suspension?

25         I don't --

1          MS. HOLMES-BOWIE:  Well, Judge, the only thing I can

2     point to is what he says in his decision, that if you have

3     drug sales going on in your store, that's contributing to

4     dangerous conditions not only in the store, but it's expected

5     that it's not going to stay in the store, it's also going to

6     be in and around the store.  And --

7          THE COURT:  One incident.  Right?  There was one six

8     years ago.  Right?

9          MS. HOLMES-BOWIE:  Right.  Drugs were --

10          THE COURT:  Two incidents involving two store clerks

11     who were fired I presume in six years creates an exigent

12     circumstance where you have to summarily suspend someone's

13     license?

14          MS. HOLMES-BOWIE:  Well, Judge, that did not have any

15     impact on the store owner at all apparently, so -- you know,

16     in terms of maintaining a drug-free situation in their store.

17          THE COURT:  Everybody wants a drug-free situation

18     around the streets.

19          But whose obligation is that?  Atlantic City seems to

20     be turning things on its head saying, hey, you, store owner,

21     unless you have clean streets outside of your store with

22     people not selling drugs and killing each other, then we're

23     going to close down your store.  Right?

24          So let me read another provision.  And I don't think

25     you addressed this, and I don't think that it's part of the

1    reason, but I think it has some relevancy.

2          It says in Section 170-13, "A revocation of a license

3    or permit shall result where three violations of the within

4    chapter or ordinances of the City of Atlantic City, which

5    shall constitute sufficient, cause occur within a two-year

6    period."

7          So that's for revocation.  But essentially what we

8    have is a revocation, because it is for an indefinite period

9    of time that the plaintiffs can't control.  Right?

10         And you have a provision that says that -- this is

11   one of the few instances in the Atlantic City Code that I've

12   seen where there's actually a guideline.  And it says that the

13   director's authority is confined to certain guidelines.  And

14   it says three violations within two years.  Right?

15         MS. HOLMES-BOWIE:  Right.

16         THE COURT:  Do you have three violations here in two

17   years?

18         MS. HOLMES-BOWIE:  Not based on what I've received.

19         THE COURT:  Not --

20         MS. HOLMES-BOWIE:  Not this decision, not based on

21   this decision.

22         THE COURT:  Right.  Not of the operations of the

23   store.  People outside the store may be doing things that they

24   shouldn't be doing.  I don't find them to be violations.

25   Right?

1   And now what you have is the ability to revoke a

2 license, it's pretty clear, and it doesn't seem to be

3 unconstitutional because it provides notice of what -- what

4 circumstances constitute the ability to revoke a license,

5 three violations within two years.

6   And we have a similar situation where you have a

7 revocation in essence where you have one violation in two

8 years, and you have two potential violations in six years.

9 Right?

10   MS. HOLMES-BOWIE:  Right.  Although I would mention

11 that -- although I understand what you're saying in terms of

12 the decision that Mr. Finch has imposed, that this is tied to

13 the criminal matter.

14   As far as my understanding is that this is a

15 suspension, and the fact that they were going through the

16 suspension process, that they were not looking to the

17 revocation, which requires the three events.

18   THE COURT:  Where is the suspension process in the

19 code?  There is none.  Right?

20   MS. HOLMES-BOWIE:  It's -- they're right there

21 together.  It says suspension/revocation.

22   THE COURT:  Where is the process set forth in the

23 Atlantic City Code as to how a suspension is supposed to

24 happen?

25   There is no due process provision in that code, is

1    there?

2        MS. HOLMES-BOWIE:  Well, there's a process in terms

3    of being entitled to the hearing.

4        THE COURT:  There's no -- there's nothing in here

5    that says you're entitled to a hearing.  It says you're

6    entitled to appeal.  That's post-deprivation.

7        How about pre-deprivation?

8        I've look at it many times.  I don't see anything

9    that requires any type of hearing, any kind of notice, any

10   kind of discovery, anything about the process.  Right?

11       MS. HOLMES-BOWIE:  I don't see the process in there,

12   but the City's position is that there have to be situations

13   where they can revoke a license without having to go through

14   the hearing process.

15       THE COURT:  Right.  And we talked about that last

16   time.

17       MS. HOLMES-BOWIE:  Right.

18       THE COURT:  About the exigency of the circumstances

19   and ten-day delay from the arrest of the store clerk to the

20   suspension.

21       MS. HOLMES-BOWIE:  Right.  That would be in that

22   case.

23       But, you know, you -- their position is you could

24   have a situation where it's not illegal but there could be

25   unsafe situations, unsafe, unsanitary conditions in the store.

1          THE COURT:  Was there a sanitary condition issue?

2          MS. HOLMES-BOWIE:  No, this is not --

3          THE COURT:  And we talked about that as well.

4          MS. HOLMES-BOWIE:  Right.

5          THE COURT:  How the code says that the director can

6   suspend for other conditions, just-- whatever is within his

7   desire or his whim, he's going to suspend somebody because

8   there's other conditions that he thinks is --

9          MS. HOLMES-BOWIE:  Well, I think the other conditions

10  would be in terms of what they're required to have for -- to

11  have the license, to be entitled to the license, which is

12  basically to maintain a safe environment for --

13         THE COURT:  Is somebody just supposed to assume that?

14         MS. HOLMES-BOWIE:  This is in the ordinance with

15  regard to how one applies and who is entitled to a license.

16         THE COURT:  I'm sorry, this is within the --

17         MS. HOLMES-BOWIE:  Who is entitled to being licensed.

18  And I think that there are several criteria.  They talk about,

19  you know, the requirements once a person is licensed, that

20  they maintain a premises that -- where there's no illegal

21  activity.  And that's one of the issues.

22         THE COURT:  I don't know.  I don't know how they're

23  connected.

24         It says unsanitary conditions, noise, disturbances or

25  other conditions.

1          Let's go back to the exigent circumstances that you

2    talked about.  And I agree with you, there are certain

3    circumstances that the government can summarily suspend

4    certain rights because of exigent circumstances.

5          But when I read the police report of this incident --

6    and it was provided to me for the first time in your

7    responsive papers -- it said that someone from the Division of

8    Licensing actually came to the store that day.  Right?  It

9    wasn't like they were told about it days later.  The Division

10   of Licensing knew about it on the day of the arrest.

11         MS. HOLMES-BOWIE:  The only thing that I can say with

12   regard to -- I don't have any information about who the person

13   was.  I did ask for that information in terms of the timing,

14   the fact that there was someone there from Licensing.  And my

15   understanding is they were only there to see if a license

16   existed, if they actually had a license, nothing more than

17   that.  They were not in any way involved in the suspension or

18   anything like that.

19         THE COURT:  Well, I thought that they came there, and

20   they looked at the cigarette license, and it was expired, and

21   they found the cartons of cigarettes without tax stamps.

22         It doesn't seem like they just came there to talk to

23   the police officer.  They were there to do something.  Right?

24   They were there to do their job.

25         Would you agree with me that --

```
 1              MS. HOLMES-BOWIE:  I agree.

 2              THE COURT:  -- they didn't just happen to show up?

 3              MS. HOLMES-BOWIE:  No.  They did come.  They were

 4    notified by the police, and they came as a result of the issue

 5    with the cigarettes.

 6              THE COURT:  And they thought it was so dangerous to

 7    the community that they waited ten days and then issued a

 8    summary suspension.  Right?  That's the position of Atlantic

 9    City?

10              MS. HOLMES-BOWIE:  Judge, I can't really speak to the

11    timing in terms of why the City of Atlantic City has a

12    particular time period in terms of this person notifying their

13    superior about the matter.

14              THE COURT:  This is a little suspect, because --

15              MS. HOLMES-BOWIE:  I don't have that.

16              THE COURT:  I'm sorry to interrupt you.

17              MS. HOLMES-BOWIE:  No.  That's not information that I

18    was provided in terms of, you know, how that information was

19    provided.

20              The only thing that I can say is that it's apparent I

21    think from the -- that the police department was concerned

22    about this premises, and they notified the Mercantile person.

23    They came and looked at at least the cigarette cartons.

24              In terms of the timing, I really don't have an

25    explanation or discussion about that.
```

1          THE COURT:  Well, with all due respect,

2    Ms. Holmes-Bowie, you're the messenger and not the client.  I

3    find it very troubling that Mr. Finch wouldn't provide some

4    information to you or provide a declaration to this Court.

5          If he's going to stand on a summary suspension based

6    upon exigency of the circumstances in which he waited ten days

7    to do it, I would think that he would file a declaration with

8    this Court or show up in court and testify and tell us what

9    the timing was, not having you stand up in court and say "I

10   don't know."  Right?  That doesn't help out Atlantic City's

11   case.  Right?

12          MS. HOLMES-BOWIE:  I understand.

13          THE COURT:  Okay.  Do you want to add anything

14   further, ma'am?

15          MS. HOLMES-BOWIE:  Well, Judge, just that the --

16   you've already noted it, that there are situations where, you

17   know, that they can suspend or they can take action with

18   regard to the license.  What their observation is, is that

19   this is not the first time of having, you know, a significant

20   issue in terms of illegal activity with the store, and that's

21   the basis for them taking the action.

22          They believe that they acted in concert with their

23   ordinances, that they, you know, offered and provided the

24   hearing.  They didn't prevent the plaintiff from offering

25   testimony, from being present at the hearing that took place

1   or the appeal that took place.  And so that they were able to

2   provide -- that that's basically the due process that was

3   provided in this case.  And that is what their position is,

4   Judge.

5            THE COURT:  I think you're talking about the

6   post-deprivation hearing.

7            MS. HOLMES-BOWIE:  Yes.

8            THE COURT:  Is the process set out anywhere?

9            MS. HOLMES-BOWIE:  The process is not -- I don't know

10  that the process is set out in their ordinances, just that

11  they have the right to have a hearing, and they basically

12  conducted themselves in that way when --

13           THE COURT:  How are the plaintiffs supposed to know

14  what's going to happen at the hearing?

15           MS. HOLMES-BOWIE:  They provided a -- they just

16  contacted -- they provided a letter to the plaintiffs is my

17  understanding with regard to the hearing and that that would

18  address the suspension.

19           THE COURT:  Well, how -- and I'll ask you again, how

20  are the plaintiffs supposed to know what's going to happen at

21  the hearing?

22           MS. HOLMES-BOWIE:  Well --

23           THE COURT:  Is it up to Professor -- Professor.  I'm

24  sorry, is it up to Mr. Finch to decide what happens at the

25  hearing?

1          MS. HOLMES-BOWIE:  Based on what their ordinances

2    indicate, yes, it's up to him.

3          Quite frankly, Judge, this is not the first time that

4    plaintiffs have been through this.  So I understand that it

5    may not be in the ordinances, but I don't think that they're

6    ignorant of what this process is.

7          THE COURT:  And what you have, I think you're sort of

8    arguing, is that plaintiff's license was suspended back in

9    2018 and they should know better, that they should know better

10   about the process, right, because they've been through it once

11   before?

12         MS. HOLMES-BOWIE:  Well, I think that that's the way

13   that the City views it, Judge.

14         THE COURT:  And you're a lawyer.  And it's a

15   rhetorical question.  You don't have to answer it.

16         That doesn't sound like constitutional law to me.

17   You've been charged once, and, therefore, we're not going to

18   have an initial hearing for you.  You've been charged

19   criminally.  You've been convicted once before.  We're not

20   going to bring you in here and read you your rights because

21   you know them already.  Right?

22         MS. HOLMES-BOWIE:  I understand.  I understand what

23   you're -- where you're headed, Judge.

24         THE COURT:  All right.  Mr. Moench, I don't think I

25   need anything further from you, unless you really have a

1  desire to say something.

2          MR. MOENCH:  No, Judge, I'm okay.  If Your Honor has

3  any questions.

4          And I take it back.

5          I just want to make sure it's clear that a lot of

6  discussions we're having are about allegations.  I just want

7  to make sure that's --

8          THE COURT:  Of course.

9          MR. MOENCH:  Even in the other stuff that's been in

10 the record, I just want to make sure it's clear, everything

11 that has been provided has been charges.  I have no idea how

12 any of those matters have resolved, even in 2018, nor have I

13 been provided with any information that there was an actual

14 suspension previously.

15         Thank you, Judge.

16         THE COURT:  Thank you.

17         So the actions of Atlantic City in this case, as I

18 said, before is akin to passing the buck.  Because Atlantic

19 City cannot adequately control the illegal activity in a known

20 high crime and high drug trafficking area, they have used a

21 vague ordinance which gives unfettered discretion to the

22 director of licensing to suspend a license without a notice or

23 hearing.

24         For support of the summary suspension in this case,

25 Atlantic City cites to a number of incidents that are

 1   unrelated to the actions of the licensee:  Drug dealing

 2   outside of the store, shooting by third parties without any

 3   association with the business of the store or the licensee.

 4          And to add insult to injury, Atlantic City conditions

 5   the potential reinstatement of plaintiff's license to the

 6   resolution of the criminal case against the store clerk who

 7   has been fired and no longer works at the store.

 8          And as I made it relatively clear, I cannot divine

 9   any relationship between the resolution of the criminal case

10   against the store clerk to the reinstatement of the license.

11   And that period of time at this point is indeterminate.

12          I think we've -- many of us have been involved in

13   criminal cases in this room and know that criminal cases

14   generally don't go on for two weeks, they at times can go on

15   for years.

16          Also, the basis of the immediate suspension as argued

17   by Atlantic City's counsel as exigent circumstances, that does

18   not hold water.  The arrest of the clerk happened on August

19   16th.  The revocation did not occur until August 26th, ten

20   days later, although a representative of the Mercantile

21   Licensing Division came to the store that day.

22          And this is a rhetorical question again.

23          Were the conditions so exigent that Atlantic City

24   waited ten days before suspending the license in order to

25   protect its citizenry?

1     In those ten days no effort was made to give notice

2  and schedule a hearing and, importantly, provide information

3  and documentation to the licensee.  That does not pass

4  constitutional muster.

5     Atlantic City's attempt to salvage its summary

6  suspension by holding a hearing after plaintiff was forced to

7  file the complaint here asking for a temporary restraining

8  order does not save the day.

9     The August 26, 2024 notice from Mr. Finch does not

10  set a hearing or the right of plaintiff to obtain information

11  regarding the reasons for the suspension.  Rather, the onus is

12  placed on the licensee to request a hearing within seven days.

13     And when plaintiffs asked for an expedited hearing

14  and filed the complaint in this court, Atlantic City scheduled

15  a hearing on one day's notice but failed to provide any

16  information prior to the hearing concerning the alleged

17  wrongful conduct of plaintiffs.  And then at the hearing

18  introduced evidence of incidents that have nothing to do with

19  plaintiff's operation of the business.

20     Mr. Finch handed down his decision on September 3rd.

21  He determined that the suspension was justified because of an

22  "imminent harm and danger to the public from the distribution

23  of cocaine and other violations as stated above."  However, no

24  other violations are noted above.

25     His decision goes on to say that there has been a

1   "continued habitual criminal use of this location for drug

2   distribution" and that "has put the community in a dangerous

3   situation that we cannot afford to let continue."

4         In support he then lists past criminal violations.

5   However, other than an execution of a search warrant related

6   to the sale of narcotics by a sales clerk in 2018 and the

7   present incident, all of the other seven incidents cited have

8   nothing to do with the operation of the store.

9         Mr. Finch I think incredibly connects two homicides,

10  one in 2022 and the other in 2023, that have absolutely

11  nothing to do with the operation of the store as -- but he

12  cites that as a contributing factor for the suspension.

13        If Mr. Finch were here, I would ask him many

14  questions, including what those murders have to do with

15  plaintiff.

16        In fact, the prevention and investigation of such

17  crimes are for Atlantic City and other agencies, not for the

18  plaintiff.

19        Would Atlantic City really want to place the

20  obligation to keep the area around plaintiff's store, which

21  Atlantic City admits is a high crime area and a known drug

22  area for drug distribution, on plaintiffs and the other store

23  owners, put the obligation on them?

24        That notion of course is as absurd and unreasonable

25  as it is unconstitutional, to punish a store owner because the

1  City itself cannot prevent an area from being a high crime and

2  high drug trafficking area.

3          Therefore, I find, first, plaintiff has shown a

4  likelihood of success on the merits.  The ordinance appears to

5  be vague and grants unfettered discretion to suspend a license

6  without notice or hearing.  Although there are situations when

7  exigent circumstances may warrant a pre-hearing suspension, no

8  such circumstances appear to warrant such a procedure here.

9          The store clerk was arrested on August 16th.  On the

10 day of the arrest, a representative of the Mercantile

11 Licensing Division came to the store and saw an expired

12 cigarette license -- sales license and cartons of cigarettes

13 without proper tax stamps and knew of the arrest of the clerk.

14         Atlantic City let ten days go by without any notice

15 to plaintiffs before it summarily suspended the license.

16         It appears to me at this very early stage of the

17 litigation that plaintiffs have shown that there were not

18 likely exigent circumstances to warrant summary suspension of

19 the license.  Accordingly, defendant's proffered excuse

20 for summarily suspending plaintiff's license will not likely

21 prevail.

22         Procedural due process involves notice and a right to

23 be heard before any significant deprivation of a protected

24 property right, *Abbott v. Latshaw,* 164 F.3d 141, 146 (Third

25 Circuit 1998).

1      A business license is a property interest worthy of

2 procedural due process protections, see *H&R Greenville Fine*

3 *Dining Inc.,* Case Number 10-325, 2011 WL 6339815 (DNJ,

4 December 19, 2011), finding that a liquor license to be a

5 property interest.

6      *Sea Girt Restaurant and Tavern Owners Association v.*

7 *Borough of Sea Girt, New Jersey*, 625 F. Supp. 3d 1482, 1483

8 (DNJ 1986), holding the same.

9      *Spinelli v. City of New York*, 579 F.3d 160, 169,

10 (Second Circuit 2009), holding that a business license once

11 granted to be property interest for purposes of procedural due

12 process.

13      To determine whether a pre-deprivation hearing is

14 required to afford due process, a court must balance the

15 factors set forth in the Supreme Court's decision in *Matthews*

16 *v. Eldridge*, which are the private interests that will be

17 affected by the official action, the risk of erroneous

18 deprivation of such interest through the procedures used, the

19 probable value, if any, of additional or substitute procedural

20 safeguard, and the government's interest, including the

21 function involved and the fiscal and administrative burdens

22 that the additional or substitute procedural requirements

23 would entail.  424 US 319, 334 to 35 (1976).

24      Also, although defendants cite to *Matthews v.*

25 *Eldridge* and the factors to consider, it fails to apply the

1   facts of this case to those factors.  Defendants have not

2   provided any analysis of the *Matthews v. Eldridge* factors,

3   other than to summarily conclude that "there were adequate

4   post-deprivation procedures in place to satisfy due process

5   requirements where a State must act quickly, or where it would

6   be impractical to provide pre-deprivation process.  The City's

7   most important goal is the safety and protection of its

8   citizenry.  Here, those safety considerations must outweigh

9   the ability of a convenience store to remain open where it has

10  a history of criminal activity and of previous drug sales

11  within and immediately outside of its premises," ECF Number

12  11, page 8.

13         As in *Fairway Ritz Corp. v. Borough of Fairview*, Case

14  Number 09-00875, 2013 WL 5946986 (DNJ, November 6, 2012),

15  wherein the court concluded that where defendants had not

16  provided an analysis of the *Matthews v. Eldridge* factors, the

17  defendant has failed to meet their burden on the procedural

18  due process requirement.

19         I make that same conclusion, where Atlantic City has

20  failed to defend their process, other than through conclusory

21  statements, of danger to the public.  I decline to do the

22  fulsome analysis that defendants should have done and find at

23  this stage of the litigation that plaintiff has a likelihood

24  of success on its procedural due process claim.

25         As to the post-suspension process through the

1  Department of Licensing with Mr. Finch as the hearing officer,

2  I express the same concerns as the judge in *Cloister East,*

3  *Inc. v. New York State Liquor Authority*, 483 F. Supp. 3d 221,

4  (SDNY 2020).  Where no prior notice of the hearing process is

5  made known to the public, there appeared to be an ad hoc

6  procedure used for the post-deprivation hearing.  No

7  information was provided concerning how the process would

8  work, such as whether the licensee could cross-examine a

9  witness or offer evidence themselves.  Such an ad hoc process

10  is insufficient.

11      Here the post-suspension hearing is at the sole whim

12  of Mr. Finch.  Nothing in Atlantic City's Code even provides

13  for a hearing, only an appeal within 30 days to the same

14  person who made the initial summary decision to suspend, see

15  Atlantic City Code Section 170-15.

16      As to the indeterminate amount of time before the

17  suspension can be reconsidered, I find that to be unreasonable

18  as well.  There doesn't seem to be any logical basis to

19  condition a reconsideration of the suspension to the third

20  party's criminal hearing.

21      And as I stated to the defendant's counsel before,

22  that precludes any reasonable efforts by plaintiffs to reapply

23  or have the suspension revoked by offering things such as

24  background checks on their employees, putting additional

25  cameras in there and having a representation that those

 1   cameras would be regularly monitored.  There has to be some

 2   reasonable steps taken by the plaintiffs that would satisfy

 3   Atlantic City other than the resolution of the criminal action

 4   against the third party.

 5           And it appears that the hearing that was provided to

 6   plaintiffs on one day's notice suffers from many infirmities.

 7   There was no defined process that the licensee or the public

 8   is made aware of.  There is no exchange of information.  The

 9   hearing is at the whim of the director.

10           And at this stage of the litigation, I am persuaded

11   that plaintiff has a likelihood of success on the merits, that

12   the post-deprivation hearing was not proper and did not

13   provide them with the required due process.

14           Second, I find that plaintiff will suffer irreparable

15   harm.  Atlantic City claims plaintiff will only suffer

16   monetary damages from their business being shut down.  I

17   disagree.

18           First, the deprivation of a constitutional right is

19   and of itself irreparable harm.  Atlantic City has taken away

20   plaintiff's property rights without due process or it appears

21   at this early stage of the litigation.  And the due process

22   provided at this point appears to be insufficient because

23   plaintiff went into the hearing without any notice of what was

24   going to be presented against him.

25           The requirement of notice is not only to be notice of

1   when a hearing will occur but notice of what charges and the

2   evidence the authorities have against plaintiffs.  That

3   certainly appears to have been lacking.

4        Third, the public policy clearly favors plaintiff

5   because the public needs to be confident that its government

6   is operating under the constraints of the Constitution and not

7   merely acting without restraint and without notice of due

8   process.

9        And fourth, finally, granting preliminary relief will

10  not result in greater harm to the non-moving party.  Atlantic

11  City believes that the area around plaintiff's store is a high

12  crime area with drug trafficking.  Its police say so in each

13  of the police reports submitted to me for review to support

14  the City's attempt to justify its summary suspension of the

15  license.

16       It appears to me at this point in the litigation that

17  the plaintiff's store suffers from the situation around the

18  store and is not to blame for what happens on the streets in

19  front of it and the area around the store.

20       Atlantic City's logic is seriously flawed from what I

21  have at this point in the litigation.  It blames, by the

22  accounts that are before me, that plaintiffs operate a

23  legitimate business that serves the community except for some

24  cigarettes that may not have tax stamps on it.  And the

25  plaintiffs have fired the store clerk involved in the drug

1    sale.  Nothing Atlantic City has provided has pinned the

2    business of the store to the high crime around the area.

3    Thus, reopening the store will not result in greater harm to

4    Atlantic City than keeping the store closed will be to the

5    plaintiff.

6          I will grant the request for the preliminary

7    injunction.  I will enter an order requiring that the

8    suspension be revoked and the license be reinstated.

9          Obviously, the parties can get together.

10         I will enter that order today.

11         Ms. Holmes-Bowie, do not wait until the order is up

12   on the docket.  Tell your client that an order will be

13   entered, and this oral decision will be incorporated in that

14   order, and that they can open the store, that the preliminary

15   injunction is going to be entered and is effective as of

16   today.  So I don't want to hear that they're waiting for the

17   order.  Okay?

18         MS. HOLMES-BOWIE:  I'll let them know, Judge.

19         THE COURT:  Okay.  So that will be ordered.

20         I think the parties now need to go on to Judge Pascal

21   if they want to have discovery and speak with her about it,

22   whether there's going to be any case management that's going

23   to be involved.

24         I think, just thinking forward, Mr. Moench, that

25   there needs to be some discovery in the case before there's an

1    ultimate resolution.  And I know that maybe piecemeal wise, we

2    could resolve some legal issues, but the factual issues I

3    think are going to play into some of the other things like

4    exigent circumstances and those types of things.  So I think

5    that you need some period of discovery.

6           And I presume, Ms. Holmes-Bowie, you're going to look

7    for discovery as well.

8           MS. HOLMES-BOWIE:  Yes, Judge.

9           THE COURT:  I think some will be needed before we

10   have either summary judgment motions or further proceedings

11   before me.

12          So I'm going to ask the parties to get in touch with

13   Judge Pascal.  I will put that in the order.  And to have an

14   initial conference with her for case management.  Okay?

15          MS. HOLMES-BOWIE:  Okay.

16          THE COURT:  Anything further, Mr. Moench?

17          MR. MOENCH:  Judge, one issue of course is that in

18   our application, you know, plaintiffs sought some damages from

19   the store's closure and also attorneys' fees connected to this

20   application.  So to the extent that there may be more

21   discovery and more damages, at this point in time, plaintiffs

22   have not only had their store closed for three weeks but have

23   paid part of my bill and will be getting another part

24   relatively shortly, because it's not an inexpensive

25   application.

1       THE COURT:  Well, I can't award fees until there's a

2  final resolution of the issues.

3       I think you asserted a 1983 claim?

4       MR. MOENCH:  We did, Judge.

5       THE COURT:  I think a 1983 claim has fee shifting in

6  it if you're successful with it.  So I certainly understand

7  that you certainly are going to reserve your rights to make

8  that fee application, and we'll hear it when it's the

9  appropriate time.

10      MR. MOENCH:  Great.  Thank you, Judge.

11      THE COURT:  Okay.  Ms. Holmes-Bowie, anything

12 further?

13      MS. HOLMES-BOWIE:  Nothing further, Judge.

14      THE COURT:  I'll send you off to Judge Pascal.  And

15 good luck to everybody.  We're off the record.

16      Oh, I'm sorry, and I'm going to direct in the order

17 that everybody obtain a transcript.  Okay?

18      COURTROOM DEPUTY:  All rise.

19      (Proceedings adjourned at 3:54 p.m.)
   - - - - - - - - - - - - - - - - - - - - - - - -

20      **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
   - - - - - - - - - - - - - - - - - - - - - - - -

21      I certify that the foregoing is a correct transcript

22 from the record of proceedings in the above-entitled matter.

23

24 */S/ Ann Marie Mitchell          25th day of September, 2024*
   *CCR-RDR-RMR-CRR*

25 *Court Reporter/Transcriber*